UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
                                                            :
                                                            :
IN RE GRAND JURY SUBPOENAS TO THE          :          25 Misc. 19 (LGS)
OFFICE OF THE NEW YORK STATE               :
ATTORNEY GENERAL                           :          **OPINION & ORDER**
                                                            :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge, sitting by designation:

The Office of the New York State Attorney General ("NYOAG") brings this action to

quash subpoenas issued by the United States Attorney's Office for the Northern District of New

York (the "USAO") and separately moves to unseal "all the pleadings and papers on file; and

any argument the Court may consider."[1]  The USAO opposes unsealing.  While NYOAG later

narrowed its motion to unseal only the motion to quash and the materials filed in support, there is

no meaningful distinction between the information contained in NYOAG's motion papers and

this matter in its entirety.  This Opinion and Order treats the instant motion as a motion to unseal

this action.

Unsealing this action is not only permissible but compelled.  One simple fact drives this

conclusion: the information at issue is not secret.  Further, the public has a substantial and

legitimate interest in NYOAG's motion to quash, which concerns alleged retaliation by the

Executive Branch, issues of state sovereignty and the purported improper appointment of the

Northern District's Acting U.S. Attorney.  These questions touch on matters of national concern,

with implications that stretch well beyond this action.  As explained below, the "special

---

[1] NYOAG's motion to quash will be addressed in a separate opinion.

circumstances" of this case weigh decisively in favor of unsealing. *See In re Craig*, 131 F.3d 99, 103 (2d Cir. 1997).

I.    **BACKGROUND**

NYOAG represents New York State and its agencies in legal matters, including by conducting civil and criminal investigations and bringing enforcement actions under state law. Attorney General Letitia James currently heads the office. James has held the position of Attorney General at all times relevant to this action.

On August 5, 2025, NYOAG received two grand jury subpoenas addressed to "Office of the New York State Attorney General" concerning active civil enforcement actions. The first subpoena pertains to *New York v. Donald J. Trump*, Index No. 452564/2022 (Sup. Ct. N.Y. Cnty.), a civil case NYOAG brought against President Trump and his associates alleging financial fraud (the "Trump Subpoena"). The second subpoena pertains to *New York v. National Rifle Association*, Index No. 451625/2020 (Sup. Ct. N.Y. Cnty.), a separate civil action brought by NYOAG against the National Rifle Association (the "NRA") and two of its senior executives, alleging violations of New York charities laws (the "NRA Subpoena"). Both subpoenas identify John A. Sarcone III, Acting United States Attorney, as the person requesting the subpoena.

Both subpoenas include cover letters signed by Acting U.S. Attorney Sarcone, confirming that they "relate[] to . . . ongoing criminal investigation[s]." Each subpoena requests "any and all documents and records relating to the Subject Case" and "any and all documents and records reflecting communications about the Subject Case between any agent and/or employee of [NYOAG] and any other third-party individual and/or entity . . . ." The Trump Subpoena spans January 1, 2022, to the present, and the NRA Subpoena spans January 1, 2020, to the present.

Within days, multiple local, national and international news outlets -- including *The New York Times*, *Fox News*, *Reuters*, *Bloomberg*, *CBS*, *Forbes*, *The Associated Press* and *BBC* -- began reporting on the two subpoenas.  On August 8, 2025, *The New York Times* published that the Department of Justice had opened "a civil rights investigation" into NYOAG and that, according to several sources, "the new subpoenas were part of a broader investigation to determine whether the office had violated the rights of Mr. Trump or others."  The same day, *Fox News* reported that "two well-placed sources familiar with the probe" confirmed "that Attorney General Pam Bondi signed off," that "subpoenas were sent to James's office" and that "there is a grand jury investigation underway in the New York State Capital of Albany."

On August 13, 2025, Abbe Lowell, James's personal attorney, also publicly confirmed the issuance of the subpoenas and their scope.[2]  Lowell told *NPR*, "[t]hey literally have sent two requests. The first is for every piece of paper . . . that the office generated or has in its possession about the case brought against the [NRA] . . . [a]nd every piece of paper that the office generated or has, in the case brought against President Trump and his companies."

On August 19, 2025, NYOAG initiated this action by filing a motion to quash the subpoenas on various grounds, including that the subpoenas are retaliatory, infringe on NYOAG's First Amendment rights, invade New York's state sovereignty and are unenforceable due to Mr. Sarcone's improper appointment as Acting U.S. Attorney.  According to NYOAG, its motion to quash was filed automatically in a sealed docket not visible to the public by the Clerk of Court.  NYOAG moves to unseal the motion and supporting court papers.  NYOAG argues that the filings contain no non-public information, and that unsealing is warranted by the unique

---

[2] Witnesses, targets and subjects are not constrained by the grand jury secrecy obligations of Rule 6(e).  *See* Fed. R. Crim. P. 6(e)(2).

posture of this matter -- where the grand jury information at issue is already public knowledge and the relevant conduct has great public import.

On October 8, 2025, the USAO opposed, arguing principally that unsealing would compromise the grand jury investigation.  NYOAG filed a reply on October 15, 2025.

## II.    LEGAL STANDARD

### A.  Grand Jury Secrecy

The policy that "proceedings before a grand jury shall generally remain secret" is "older than our Nation itself."[3]  *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973) (Friendly, C.J.) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959)).  Grand jury secrecy "contribute[s] to the success of grand juries and to the protection of those who appear before them."  *In re Craig*, 131 F.3d at 102.  Several aims underpin this approach:

(1) [t]o prevent the escape of those whose indictment may be contemplated;
(2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors;
(3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it;
(4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and]
(5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial when there was no probability of guilt.

*Id.* (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958)); *see also In re Biaggi*, 478 F.2d at 491-92.

Rule 6(e) governs grand jury secrecy and bars disclosure of grand jury matters by most persons privy to them (i.e., grand jurors, attorneys for the USAO, court reporters, operators of

---

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

recording devices and interpreters, but not witnesses, targets or subjects). *See* Fed. R. Crim. P. 6(e)(2)(B). The Second Circuit construes the scope of grand jury "matters" broadly: "Rule 6(e)(6) provides that all records, orders, and subpoenas *relating to* grand jury proceedings be sealed, not only actual grand jury materials; similarly, Rule 6(e)(5) refers to matters *affecting* a grand jury proceeding, not only the proceedings themselves." *In re Grand Jury Subpoena*, 103 F.3d 234, 237 (2d Cir. 1996); *accord Laws.' Comm. for 9/11 Inquiry, Inc. v. Garland*, 43 F.4th 276, 287 (2d Cir. 2022). But Rule 6(e) does not amount to a blanket shield over all documents that pertain to a grand jury; rather, the Rule requires secrecy only "to the extent necessary to protect the grand jury process." *In re Grand Jury Subpoena*, 103 F.3d at 237; *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54-55 (2d Cir. 1960) (Rule 6(e) "is intended only to protect against disclosure of what is said or what takes place in the grand jury room," not to bar disclosure of documents sought "for [their] own sake" where disclosure does not reveal grand-jury matters).

Notwithstanding its broad mandate, Rule 6(e) explicitly carves out certain circumstances when disclosure of grand jury materials *is* appropriate. Fed. R. Crim. P. 6(e)(3)(E)(i)-(v). These include situations where disclosure is "at the request of the government, at the request of a criminal defendant, or 'preliminarily to or in connection with a judicial proceeding.'" *Laws.' Comm. for 9/11*, 43 F.4th at 285 (quoting Fed. R. Crim. P. 6(e)(3)(E)).

**B. The "Special Circumstances" Doctrine**

The Second Circuit also recognizes that the disclosure of grand jury materials may be appropriate even when Rule 6(e) does not explicitly authorize disclosure. The so-called "special circumstances" doctrine permits disclosure where "special circumstances" counsel against secrecy, born from cases concerning disclosure of "grand jury matters claimed to be of unusual

historical or public interest." *United States v. Maxwell*, 20 Cr. 330, 2025 WL 2301281, at *7

(S.D.N.Y. Aug. 11, 2025) (citing *In re Biaggi*, 478 F.2d at 492-93; *In re Craig*, 131 F.3d at

101-02; *Laws.' Comm. for 9/11*, 43 F.4th at 285-87); *see also United States v. Epstein*, 19 Cr.

490, 2025 WL 2407599, at *3 (S.D.N.Y. Aug. 20, 2025).  The doctrine is based on the district

court's supervisory authority over the grand juries it empanels.  *In re Craig*, 131 F.3d at 102.

The inquiry is "highly discretionary and fact-sensitive," *id.* at 106, resting on the trial court's

"sound discretion under the special circumstances of each case," *id.* at 103.

To determine whether "special circumstances" warrant disclosure, the Second Circuit

considers a "non-exhaustive list" of nine factors:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the
> grand jury proceeding or the government opposes the disclosure; (iii) why
> disclosure is being sought in the particular case; (iv) what specific information is
> being sought for disclosure; (v) how long ago the grand jury proceedings took
> place; (vi) the current status of the principals of the grand jury proceedings and that
> of their families; (vii) the extent to which the desired material -- either permissibly
> or impermissibly -- has been previously made public; (viii) whether witnesses to
> the grand jury proceedings who might be affected by disclosure are still alive; and
> (ix) the additional need for maintaining secrecy in the particular case in question.

*In re Craig*, 131 F.3d at 106; *accord Laws.' Comm. for 9/11*, 43 F.4th at 285 (the "*In re Craig*

Factors").  The "special circumstances" doctrine does not justify granting "garden variety"

motions unauthorized by Rule 6(e).  *In re Craig*, 131 F.3d at 103.  The party seeking to disclose

grand jury materials bears the burden of "demonstrat[ing] that disclosure is appropriate." *Laws.'*

*Comm. for 9/11*, 43 F.4th at 285.  While "the baseline presumption is against disclosure," *id.*,

"the discretion of a trial court in deciding whether to make public the ordinarily secret

proceedings of a grand jury investigation is one of the broadest and most sensitive exercises of

careful judgment that a trial judge can make," *In re Craig*, 131 F.3d at 104; *see also Laws.'*

*Comm. for 9/11*, 43 F.4th at 285-86; *Maxwell*, 2025 WL 2301281, at *8.

## III.    DISCUSSION

As explained below, the "special circumstances" of this case -- namely that the grand jury information at issue is not secret and that the motion to quash implicates questions of national concern -- weigh decisively in favor of unsealing.

### A.  The Limited Information at Issue is Already Public Knowledge

The limited scope of the grand jury information at issue and the fact that the information is already widely known provide the most compelling reasons for disclosure.  *See In re Craig*, 131 F.3d at 106 (factors "(iv) what specific information is being sought for disclosure" and "(vii) the extent to which the desired material -- either permissibly or impermissibly -- has been previously made public"); *Laws.' Comm. for 9/11*, 43 F.4th at 285.  Rule 6(e) is meant to protect grand jury secrecy.  "The extent to which the grand jury material in a particular case has been made public is clearly relevant because even partial previous disclosure often undercuts many of the reasons for secrecy." *Laws.' Comm. for 9/11*, 43 F.4th at 286 (quoting *In re Craig*, 131 F.3d at 107).  The D.C. Circuit follows the same common-sense principle, recognizing that "[i]nformation widely known is not secret." *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006) (acknowledging the "common-sense proposition" that "secrecy is no longer necessary when the contents of grand jury matters have become public").

Here, as the USAO acknowledges, the grand jury matters that would be disclosed are already public knowledge.  NYOAG does not seek to unseal evidence, transcripts or other grand jury materials.  The references to grand jury matters in the motion to quash and accompanying papers mirror public reporting.  Public reporting disclosed (1) the existence of the grand jury investigation, (2) the investigation's subject matter, (3) that two subpoenas were issued to

7

NYOAG and (4) the subpoenas' scope.  The only non-public information contained in NYOAG's motion are the copies of the subpoenas themselves and the specific language of the requests -- which James's personal attorney largely confirmed to *NPR*.  *See In re Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir. 1998) (when a witness's attorney "virtually proclaimed from the rooftops that his client had been subpoenaed," this fact "lost its character as Rule 6(e) material").  In the wake of two hundred-plus news reports on the matter, "one can safely assume that the cat is out of the bag."  *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 155 (D.C. Cir. 2007); *see also In re Am. Hist. Ass'n*, 49 F. Supp. 2d 274, 293 (S.D.N.Y. 1999) (attributing "the absence of privacy concerns," in part, to the fact that "the witnesses' involvement with the investigation is public knowledge, as is the substance of portions of . . . their grand jury testimony").

To the extent that the USAO's Opposition includes unreported facts (e.g., information about the grand jury's term and status), those facts do not warrant blanket secrecy.  Redaction of these limited details suffice under Rule 6(e)'s mandate, which requires sealing only "to the extent . . . necessary to prevent the unauthorized disclosure" of grand jury matters.  Fed. R. Crim. P. 6(e)(6); *see In re Grand Jury Subpoena*, 103 F.3d at 237.  The limited scope of the information at issue, that granting NYOAG's motion adds no additional grand jury information to the public record and that limited redactions can easily address any previously unreported facts, all weigh in favor of unsealing.  *See In re Biaggi*, 478 F.2d at 493 (affirming release of grand jury testimony with redactions, absent the parties reaching agreement otherwise).

**B.  The Status of the Relevant Parties**

The identity of the party seeking disclosure -- the subpoenas' recipient -- also weighs in favor of unsealing.  *See In re Craig*, 131 F.3d at 106 (factor "(i) the identity of the party seeking disclosure"); *Laws.' Comm. for 9/11*, 43 F.4th at 285.  Courts must give "great weight" to the identity of the party seeking disclosure, *In re Craig*, 131 F.3d at 106, as grand jury secrecy "rests on a number of interests," including those of grand jury witnesses and potential targets, *In re Biaggi*, 478 F.2d at 491.  Here, the recipient of the subpoenas -- also seemingly the investigation's target -- does not oppose disclosure and has publicly confirmed the general facts sought to be disclosed.  This factor weighs in favor of unsealing.  *See In re Biaggi*, 478 F.2d at 493; *id.* at 494 (suppl. op.) (affirming release of New York City mayoral candidate's grand jury testimony where witness sought disclosure after grand jury information had leaked).

For the same reason, two related factors also weigh in favor of unsealing: "(vi) the current status of the principals of the grand jury proceedings and that of their families" and "(viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive."  *See In re Craig*, 131 F.3d at 106.  Here, the movant seeking unsealing is both the grand jury's presumptive target and a grand jury witness subpoenaed for documents.  Any concerns about prejudice to the target, or retaliation or tampering directed at the witness, are ameliorated by the fact that the target/witness is the party seeking disclosure.  *See In re Biaggi*, 478 F.2d at 493; *DiLeo v. Comm'r of Internal Revenue*, 959 F.2d 16, 19 (2d Cir. 1992) (explaining that nondisclosure aims to "protect[] the safety of witnesses who testify" and "the reputations of suspects who are ultimately exonerated" (citing *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983))).

That the USAO opposes unsealing weighs against granting the motion, but not dispositively. *See In re Craig*, 131 F.3d at 106 (factor "(ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure"); *Laws.' Comm. for 9/11*, 43 F.4th at 285. While the "government's position should be paid considerable heed," it is "not dispositive." *In re Craig*, 131 F.3d at 106. The USAO argues that the interests of the grand jury investigation more broadly, including the USAO's interest in keeping grand jury matters sealed, "outweigh[] any one subpoena recipient's interest in disclosure, particularly where . . . lifting the seal would not remove the government's Rule 6(e) obligations or provide the public a full picture of the scope of the grand jury's investigation." Yet the USAO does not cite any case law to support this proposition. Nor does the USAO address why its general interest in preserving grand jury secrecy outweighs the public interest in disclosure identified by NYOAG, particularly where the grand jury information is already widely known. *See In re Am. Hist. Ass'n*, 49 F. Supp. 2d at 291 (ordering disclosure of grand jury testimony over the government's objection where the government "fail[ed] to identify any material need to keep the grand jury materials secret"); *In re Nat'l Sec. Archive*, 104 F. Supp. 3d 625, 626, 629 (S.D.N.Y. 2015) (similar).

## C. Public Interests Justifying Disclosure

NYOAG's motion to quash raises significant constitutional and procedural concerns that implicate the public's interest in government transparency and accountability. These interests also favor disclosure. *See In re Craig*, 131 F.3d at 106 (factor "(iii) why disclosure is being sought in the particular case"); *Laws.' Comm. for 9/11*, 43 F.4th at 285. As a threshold matter, granting the motion to unseal would result primarily in the disclosure of judicial and not grand jury documents -- i.e., NYOAG's motion to quash and related materials. *See Giuffre v. Maxwell*, 146 F.4th 165, 175-177 (2d Cir. 2025) (per curiam); *id.* at 176 ("To qualify as a 'judicial

10

document' the materials at issue must be relevant to the performance of the judicial function and useful in . . . a federal court's exercise of power under Article III . . . ."). Like grand jury secrecy, public access to judicial documents "is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Public access serves as a measure of "public monitoring" and "accountability," enabling public confidence in the courts' administration of justice -- an aim not possible without access to the "documents . . . used in the performance of Article III functions." *Giuffre*, 146 F.4th at 175. The Second Circuit has long recognized that "public interest" bears on disclosure of grand jury materials, and that in some cases "historical or public interest alone could justify the release of grand jury information." *In re Craig*, 131 F.3d at 105; *see In re Biaggi*, 478 F.2d at 494 (suppl. op.). This is especially true where the dispute itself presents issues of far-reaching public importance. *See, e.g.*, *In re Biaggi*, 478 F.2d at 494 (suppl. op.) (public controversy involving New York City mayoral candidate); *cf. In re Am. Hist. Ass'n*, 49 F. Supp. 2d at 293-95, 297 (grand jury transcripts involving McCarthy-era espionage investigations).

Here, NYOAG's arguments to quash the subpoenas concern issues of significant public importance. NYOAG's arguments include whether the subpoenas (1) were issued to retaliate against actors disfavored by President Trump and his allies -- a theme relevant to active cases across the country[4]; (2) unreasonably infringe on New York's state sovereignty, a matter of

---

[4] *See, e.g., United States v. Comey*, No. 25 Cr. 272 (E.D. Va. filed Sept. 25, 2025); *United States v. James*, No. 25 Cr. 122 (E.D. Va. filed Oct. 9, 2025); *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 42 (D.D.C. 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 127, 151-52 (D.D.C. 2025); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 99 (D.D.C. 2025); *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 157 (D.D.C. 2025).

strong public interest to the people of New York[5] and (3) are facially invalid because of the

Acting U.S. Attorney's allegedly improper appointment -- a question with significant

implications for criminal prosecutions within the Northern District, and one currently playing out

in several judicial Districts across the country.[6]  These clear public interests support disclosure.[7]

*See, e.g.*, *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Procs.*

*Concerning Former Vice President Mike Pence*, 678 F. Supp. 3d 135, 145 (D.D.C. 2023)

(unsealing references to grand jury materials, in part, because former Vice President Pence's

"invocation of the Speech or Debate Clause and this Court's resolution of the ensuing

controversy carry far-reaching public implications"); *In re Nat'l Sec. Archive*, 104 F. Supp. at

629 (discussing "credible allegations of prosecutorial misconduct" as a consideration "in favor of

disclosure"); *cf. Maxwell*, 2025 WL 2301281, at *12 (denying unsealing where grand jury

materials "d[id] not reveal information outside the public domain," making disclosure

cumulative despite public interest, unlike here, where the public interest lies in the parties' legal

arguments and their adjudication).

---

[5] *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (noting that states' "exercise[] [of] their police powers to protect the health and safety of their citizens" have long been "matters of local concern").

[6] *United States v. Ramirez*, No. 25 Cr. 264, 2025 WL 3019248, at *1 (C.D. Cal. Oct. 28, 2025) (disqualifying Acting U.S. Attorney); *United States v. Garcia*, No. 25 Cr. 230, 2025 WL 2784640, at *1 (D. Nev. Sept. 30, 2025) (same); *United States v. Giraud*, No. 24 Cr. 768, 2025 WL 2416737, at *1 (D.N.J. Aug. 21, 2025); (same); *see* James B. Comey, Jr.'s Motion and Memorandum in Support of Motion to Dismiss Indictment, *Comey*, No. 25 Cr. 272 (E.D. Va. Oct. 20, 2025) (arguing improper appointment of Acting U.S. Attorney) (Dkt. No. 60).

[7] The two press inquiries directed at the District Court to unseal this case, Dkt. Nos. 31 and 42, and recent articles discussing the sealed matter before this Court provide additional indicia demonstrating the public interests at stake.  *See, e.g*., William K. Rashbaum, Jonah E. Bromwich & Michael S. Schmidt, *Letitia James Questions Authority of Prosecutor Who Is Investigating Her*, N.Y. Times (Oct. 30, 2025), https://www.nytimes.com/2025/10/30/nyregion/letitia-james-investigation-subpoenas.html.

The USAO's arguments to the contrary do not dilute the public interests justifying disclosure. The USAO contends that "[n]one of the cases the NYOAG cites where courts have held that certain grand jury materials should be unsealed to serve the public's interest apply here." Specifically, the USAO posits that:

> [The cited cases] all involve courts ordering the unsealing of *evidence* gathered pursuant to a grand jury's investigation. In this case, the NYOAG has yet to produce any records (and presumably is not offering to publicly disclose any responsive records) not already in the public purview. Until the NYOAG seeks the disclosure of *evidence* gathered by the grand jury, or the grand jury completes its investigation, the NYOAG's reasons for disclosure do not warrant unsealing of its Quash Motion.

*Id*. But this argument conflates the full universe of grand jury materials with the narrow disclosures at issue. The cited cases do not turn on whether evidence was "gathered by" the grand jury or whether an investigation was complete. Rather, they involve situations where the disclosure of sealed matters, whether transcripts or other grand jury materials, served important public interests that weighed in favor of disclosure. Here, NYOAG seeks to unseal the subpoenas and related court papers challenging the subpoenas' enforceability on constitutional and procedural grounds, not to uncover what the grand jury has learned or obtained. The public's interest in fundamental questions of government accountability, integrity and transparency -- and these questions' ultimate resolution -- is no less important because a grand jury investigation is ongoing. The strong public interests implicated by this action favor disclosure.

### D. Additional Need for Maintaining Secrecy

Even accepting the USAO's concern that the grand jury investigation is ongoing and sensitive, that concern does not justify blanket secrecy in this matter. *See In re Craig*, 131 F.3d at 106 (factor "(ix) the additional need for maintaining secrecy in the particular case in question"); *Laws.' Comm. for 9/11*, 43 F.4th at 285. The USAO argues that:

13

> Not only are individuals who could conceivably be targets or subjects of the ongoing grand jury investigation likely still alive, but so are the numerous potential individuals who were witnesses to the decisions to investigate and litigate the [underlying] Lawsuits. The current investigation is undoubtedly significant, which the NYOAG itself argues. Secrecy will help the grand jury successfully operate and protect those who appear before the grand jury.

This argument, however, once again fails to acknowledge that the information at issue is already public. While the USAO is correct that "many key details" are not public, including "what records the grand jury may have already obtained; whether any individual(s) have testified . . . ; which potential violation(s) of federal criminal law [are] under investigation; and, of course, what records the NYOAG would actually produce in response to the subpoenas if not quashed," the instant motion does not implicate any of that information. Despite the USAO's arguments, the choice is not a binary one of complete secrecy versus disclosure; the existence of the investigation and the scope of the subpoenas are already widely known. The question is whether unsealing this action, given the documents presently filed, materially changes the balance of information such that disclosure would impede the grand jury's work. For the reasons discussed, disclosure of already public information will not impede the grand jury investigation. The USAO's secrecy concerns therefore do not justify maintaining this action under seal.

### E. Timing

The ongoing status of the grand jury proceedings, while often an important factor, carries minimal weight in this instance given the limited scope of the contemplated disclosures. *See In re Craig*, 131 F.3d at 106 (factor "(v) how long ago the grand jury proceedings took place"); *Laws.' Comm. for 9/11*, 43 F.4th at 285. The passage of time is relevant in several ways. It may illustrate the strength of public interest; it may "erode[] many of the justifications for continued secrecy"; and it "inevitably . . . brings about the death of the principal parties involved in the investigation[]." *In re Craig*, 131 F.3d at 107.

14

Here, the public interest is evident without the passage of time, and the demise of the NYOAG is unlikely.  More to the point, the contemplated disclosures do not concern grand jury transcripts or other materials that might compromise the integrity of the investigation or reveal witness information.  The out-of-Circuit cases the USAO cites add little.  First, as the USAO points out, the Second Circuit's "special circumstances" doctrine differs from that of sister Circuits.  Second, the cited cases all pertain to grand jury transcripts or contempt proceedings stemming from refusals to testify before a grand jury and are inapposite to the limited disclosures at issue.

In sum, careful consideration of the *In re Craig* factors weighs in favor of unsealing this matter, and the USAO's arguments to the contrary are unpersuasive.  The "special circumstances" of this case warrant disclosure: this action concerns only NYOAG's motion to quash two subpoenas that have already been widely disclosed and raise issues of significant public interest.

## IV.    CONCLUSION

For the foregoing reasons, NYOAG's motion to unseal is **GRANTED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 2 and to unseal this matter in its entirety, with the exception of Dkt. No. 38.

By **November 7, 2025**, the USAO shall refile all papers at Dkt. No. 38 (including exhibits) with limited redactions of all non-public information concerning the grand jury.  By **November 12, 2025**, NYOAG may, but need not, file a letter -- not to exceed 2 pages -- challenging any redactions that exceed the scope of this Order.

Dated:  October 31, 2025
        New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**