IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
IN RE GRAND JURY SUBPOENAS TO         :      25 Misc. 19 (LGS)
THE OFFICE OF THE NEW YORK STATE      :
ATTORNEY GENERAL                      :
:
:
:
------------------------------------------------------------X

**THE GOVERNMENT'S CORRECTED
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A STAY
PENDING APPEAL**

TABLE OF CONTENTS

GOVERNING LAW ................................................................................................................. 2

DISCUSSION .......................................................................................................................... 4

    1.    The Court's Decision Raises Serious Legal Questions Warranting a Stay. ..... 4

    2.    The Government Would Suffer Serious and Irreparable Harm. .................... 12

    3.    A Stay Pending Appeal Would Not Cause NYOAG Substantial Injury. ......... 14

    4.    A Stay Would Serve the Public Interest. ....................................................... 14

CONCLUSION...................................................................................................................... 16

On January 8, 2026, this Court issued an Opinion and Order that quashed two grand jury subpoenas issued to the Office of the New York State Attorney General ("NYOAG") seeking documents and records related to two civil cases brought by that Office: *New York v. Trump*, Index No. 452564/2022 (Sup. Ct. N.Y. Cnty.) and *New York v. National Rifle Association*, Index No. 451625/2020 (Sup. Ct. N.Y. Cnty.). Opinion & Order, ECF No. 50. The subpoenas arose from an ongoing criminal investigation into both cases (the "subject investigation"). This Court ruled that the subpoenas were invalid and unenforceable because John A. Sarcone III was not lawfully serving as Acting U.S. Attorney when the subpoenas were issued, and Mr. Sarcone "personally directed the issuance of both subpoenas and the documents sought are returnable to him personally." *Id.* at 1. This Court also disqualified Mr. Sarcone from any further involvement in prosecuting or supervising the subject investigation "regardless of his title." *Id.* at 23-24.

Pursuant to Fed. R. App. P. 8(a)(1), the government asks this Court to stay its Order quashing the subpoenas and disqualifying Mr. Sarcone from participating in the subject investigation, pending resolution of any appellate proceedings[1] related to that Order.[2] Such a stay would be consistent with the disposition of *United States v.*

---

[1]   Pursuant to 28 C.F.R. § 0.20(b), the Solicitor General has authorized an appeal of this Court's decision.

[2]   The Order is immediately appealable under 18 U.S.C. §3731. *See, e.g.*, *United States v. Awadallah*, 349 F.3d 42, 52 (2d Cir. 2003) (noting that "[t]he statute authorizing the government to appeal from 'a decision or order of a district court suppressing or excluding evidence ... in a criminal proceeding,' 18 U.S.C. § 3731 ... has been construed to authorize appeal of such an order from a grand jury proceeding."), citing *Matter of Grand Jury Empanelled*, 597 F.2d 851, 857 (3d Cir.

1

*Garcia*, Case No. 2:25-cr-230 (D. Nev.), where the district court granted the government's motion to stay a similar order, and *United States v. Giraud*, Case No. 1:24-cr-768 (D. N.J.), where the district court issued a stay of its own accord. The government respectfully submits that the same result is appropriate here.

If the Court grants this stay motion, the government will not seek to enforce the two subpoenas at issue in this case during the pendency of the appeal.

## GOVERNING LAW

Courts consider four factors in deciding whether to grant a request for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other

---

1979); *see also United States v. Aslam*, 936 F.2d 751, 754 (2d Cir. 1991) (describing §3731 as a "broad authorization to appeal").

Likewise, the Order is appealable under the collateral order doctrine, which permits appeal of a small class of interlocutory orders under §1291 before a final judgment on the merits. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Such orders must (1) conclusively determine the disputed question, (2) resolve an important issue that is completely separate from the merits of the dispute, and (3) be effectively unreviewable on appeal from a final judgment. *See, e.g., Fischer v. New York State Dept. of Law*, 812 F.3d 268, 273 (2d Cir. 2016). Applying the collateral order doctrine, the Third Circuit held in *United States v. Giraud*, 160 F.4th 390, 396 (3d Cir. 2025) that it had jurisdiction under 28 U.S.C. §1291 to review the order disqualifying the Acting U.S. Attorney in that case. *See also, e.g., United States v. Williams*, 68 F.4th 564, 570 (9th Cir. 2023) (holding that disqualification of U.S. Attorney's Office from litigating misconduct motions satisfied collateral order doctrine); *United States v. Whittaker*, 268 F.3d 185, 191-93 (3d Cir. 2001) (order disqualifying U.S. Attorney from participating in prosecution was immediately appealable collateral order); *Matter of Grand Jury Subpoena of Rochon*, 873 F.2d 170, 173 (7th Cir. 1989) (collateral order doctrine permitted immediate appeal by government from order disqualifying Attorney General from participation in grand jury proceedings).

2

parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (citation omitted); *see, e.g.*, *Mahdawi v. Trump*, 136 F.4th 443, 449 (2d Cir. 2025) (applying the four-factor *Nken* test). "The first two factors ... are the most critical," *id*, and "a stronger showing on one of these two factors can offset a weaker showing on the other," *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014), *citing, e.g.*, *Sutherland v. Ernst & Young LLP,* 856 F. Supp. 2d 638, 640 (S.D.N.Y. 2012); *accord Doe v. Trump Corp.*, No. 18 CIV. 9936 (LGS), 2020 WL 2538400, at *1 (S.D.N.Y. May 18, 2020); *see also Nw. Nat. Ins. Co. v. Insco, Ltd.*, 866 F. Supp. 2d 214, 218 (S.D.N.Y. 2011) ("'[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other.'" (quoting *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)).

"It is well-established in this circuit that a party seeking a stay may satisfy the first factor—'likelihood of success'—by showing that there are 'serious questions' going to the merits of the dispute and that the balance of hardships tips decidedly in its favor." *Starke v. SquareTrade, Inc.*, No. 16-cv-7036, 2017 WL 11504834, at *1 (E.D.N.Y. Dec. 15, 2017), citing *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-37 & n.7 (2d Cir. 2010) (concluding that *Nken* did not abrogate the Second Circuit's "serious questions" standard)[3]; *see*

---

[3] Although *Citigroup Global Markets* concerned a motion for a preliminary injunction, both the Second Circuit and the Supreme Court have recognized that the "four factor standard for granting a stay pending appeal … overlap[s] substantially with the preliminary injunction standard." 598 F.3d at 37 (citing *Nken*, 556 U.S. at 434).

*also In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at *2. As then District Judge Nathan explained: "A 'serious questions' standard is particularly appropriate when a district court is asked to stay its own order; under such circumstances, the court has already determined that the applicant failed to succeed on the merits. Asking the district court to then find that the movant is likely to succeed on the merits on appeal would require the district court to find that its own order is likely to be reversed—a standard that for practical purposes is rarely going to be satisfied." *In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at *2.

## DISCUSSION

The government adheres to its position that (1) Mr. Sarcone is validly serving as Acting U.S. Attorney under the FVRA and (2) is authorized to supervise the subject investigations and the U.S. Attorney's Office generally pursuant to an express delegation of such authority by the Attorney General. *See* ECF No. 45. The government respectfully disagrees with the Court's decision to the contrary and submits that the government has a strong likelihood of success on appeal. At the very least, this case presents "serious questions" about separation of powers, the scope of the FVRA, the Attorney General's authority to delegate her authority to supervise criminal prosecutions on behalf of the United States, and the validity of grand jury subpoenas—all legal questions that will be reviewed *de novo* on appeal.

1. **The Court's Decision Raises Serious Questions Warranting a Stay.**

As explained more fully in the government's opposition to NYOAG's motion to quash, ECF No. 45, the plain text of 5 U.S.C. §3345(a)(1) demonstrates that Mr. Sarcone is validly serving as the Acting U.S. Attorney. The statute provides that "[i]f"

4

an Executive Branch officer subject to Presidential appointment and Senate confirmation ("PAS") "dies, resigns, or *is* otherwise unable to perform" the functions of the office, then "the first assistant to the office of such officer shall perform" those functions in an acting capacity. 5 U.S.C. §3345(a)(1) (emphasis added). Mr. Sarcone's appointment complies with the plain meaning of that provision: no PAS United States Attorney existed at the time Mr. Sarcone was designated as First Assistant United States Attorney, nor has one existed at any time since, and thus Mr. Sarcone "shall perform" the duties of the office of United States Attorney on an acting basis (subject to statutory time limits) for as long as a PAS officer "is otherwise unable to perform" those functions. The FVRA does not limit acting service to only the individual (if any) who happened to be serving as "the first assistant to the office of the officer" when the vacancy initially arose. Although the Court disagreed with those arguments, they present (at minimum) serious legal questions for appeal. Indeed, as the government has argued, ECF No. 45 at 33-34, the Court's decision is at odds with the longstanding interpretation of the FVRA adopted by both the Government Accountability Office and the Office of Legal Counsel, and with decades of practice across the Executive Branch. Limiting subsection (a)(1) to require the first assistant to be an incumbent in order to serve as an acting PAS officer renders (a)(1) effectively unavailable during presidential transitions, when it is often most needed, as frequently both the PAS office and first assistant position are vacated before the transition. And as explained in the government's opposition, ECF No. 45 at 35, there are at least two significant circumstances where the President cannot rely on subsection (a)(1) to select an acting

officer and thus subsections (a)(2) and (a)(3) play an important role. When the first assistant position is itself a PAS office,[4] (a)(1) is unavailable because the Executive Branch cannot appoint a first assistant without Senate confirmation, and the President must use (a)(2) or (a)(3) instead. Subsections (a)(2) and (a)(3) also play a distinct role when the President wants to leave the current first assistant in place and appoint someone else to be the acting officer. Even if such circumstances are infrequent, that does not render the function of subsections (a)(2) and (a)(3) superfluous.

Moreover, as explained in the government's opposition, ECF No. 45 at 35-39, the Attorney General has delegated to Mr. Sarcone the authority to conduct grand jury proceedings in his capacity as Special Attorney under 28 U.S.C. §515. The Court's decision rejecting that argument is in tension with the Attorney General's broad statutory authority to delegate her powers—including powers otherwise exercised by U.S. Attorneys—to special attorneys and others acting on her behalf, and with decisions of other Circuits who have held that the FVRA does not invalidate the exercise of delegable duties. *See, e.g., Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022) (holding that the FVRA does not preclude a non-acting officer from exercising lawfully delegated duties of a vacant PAS office); *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073 (9th Cir. 2024) (holding that the FVRA's remedial provisions do not

---

[4] This is often the case for the highest positions in agencies. For example, both the Secretary of State and Deputy Secretary are PAS offices. 22 U.S.C. §2651a(a)(2).

6

prohibit ratification of an agency official's performance of lawfully delegated duties of a vacant PAS office). The government agrees that Section 3347 of the FVRA is the exclusive means of designating an *acting official* who can perform *all* of the duties of the office—both delegable and nondelegable. But a person does not need to be an acting official to perform the delegable duties of the office, since the Attorney General can, as she did here, delegate those duties to a *non*-acting official.

The government respectfully submits that the Court's disqualification of Mr. Sarcone from any participation in the subject investigation "regardless of his title" was error. Opinion and Order, at 23. If Mr. Sarcone is not functioning as the purported Acting U.S. Attorney, there is no reason that he cannot participate in the investigation as a Special Attorney duly appointed under 28 U.S.C. §515, and in his capacity as First Assistant United States Attorney. In appointing Mr. Sarcone as Special Attorney, the Attorney General authorized him to conduct in the Northern District of New York "any kind of legal proceedings … including Grand Jury proceedings … which United States Attorneys are authorized to conduct." *See* ECF No. 45, Exh. 14. The Court concluded that this delegation was invalid in its entirety because it was not a "delegation of specific, nonexclusive duties." ECF No. 50, at 19. But even if this delegation cannot create a "*de facto* U.S. Attorney," as the Third Circuit determined in *United States v. Giraud*, 160 F.4th 390, 406 (3d Cir. 2025), the delegation was sufficient to authorize Mr. Sarcone's participation in the subject investigation. Other district courts considering similarly broad delegations have rejected an "all or nothing" approach. Most recently, the United States District Court

for the District of New Mexico considered a similar delegation by the Attorney General to then-Assistant United States Attorney Ryan Ellison. *See* Mem. Decision & Order, *United States v. Ramirez-Martinez*, et al., Case No. 24-cr-1105, at 20, 40, 43, *available at* 2026 WL 113431 (D. N.M. Jan. 14, 2026). As here, the Attorney General delegated to Mr. Ellison "all the delegable, nonexclusive functions of the United States Attorney for the District of New Mexico." *Id.* at 20. The Attorney General also designated Mr. Ellison as First Assistant United States Attorney, as she did here. *Id.* at 19. Although the district court determined that the Section 515 delegation could not authorize Mr. Ellison to perform *all* the functions of the United States Attorney, it nevertheless determined that this delegation authorized Mr. Ellison to perform the functions of a First Assistant United States Attorney, including supervising and conducting legal proceedings in that district. *Id.* at 40, 43. As a result, the district court refused to invalidate actions taken by Mr. Ellison within the scope of those delegable functions and refused to disqualify him from performing the lawful duties of a First Assistant United States Attorney. *Id.* at 43-51. The United States District Court for the Central District of California reached a similar conclusion. *United States v. Ramirez*, No. 22-cr-573, 2025 WL 3019248, at *18-19 (C.D. Cal. Oct. 28, 2025). This Court should not have quashed the grand jury subpoenas because obtaining such subpoenas was within the scope of the authority properly delegated to Mr. Sarcone under Section 515 as a Special Attorney, and his duties as First Assistant United States Attorney. Despite this Court's contrary ruling, there is a sufficiently serious legal question concerning the validity of the Attorney General's delegation to

8

warrant a stay pending appeal.

To date, only one Circuit has reached the issues presented in this case. *Giraud*, 160 F.4th at 396.[5] Although the Third Circuit rejected the government's interpretation of the FVRA and affirmed the district court's disqualification order, *id*. at 406-407, this outcome does not preclude this Court from concluding that this matter raises sufficiently serious legal issues to satisfy the first prong of the *Nken* test. Indeed, the district court in *Giraud* granted a stay of its disqualification order *sua sponte*, presumably recognizing the same. *See United States v. Giraud*, 795 F. Supp. 3d 560, 606 (D.N.J. 2025). Likewise, the United States District Court for the District of Nevada granted the government's stay motion in that case. *See* Order, *United States v. Garcia*, Case No. 2:25-cr-230, Dkt. 52 (D. Nev. Oct. 23, 2025) (hereinafter "*Garcia* Stay Order").[6]

This case raises sufficiently serious legal questions to warrant a stay pending appeal for another reason. The Court's decision to quash subpoenas based on an alleged defect in the organizational structure of the U.S. Attorney's Office is unprecedented, and lacks basis in the Federal Rules of Criminal Procedure and case law. Federal Rule of Criminal Procedure 17(c)(2) states that a court "may quash or modify [a] subpoena if *compliance* would be unreasonable or oppressive" (emphasis

---

[5] The Ninth Circuit has scheduled oral argument in *Garcia* for February 12, 2026. *United States v. Garcia*, Case No. 25-6229 (9th Cir.), Dkt. 32.

[6] A copy of the *Garcia* Stay Order is provided as Exhibit 1 to the accompanying Affidavit of Assistant United States Attorney Richard D. Belliss.

9

added). As the plain language of the rule makes clear, the focus is on the recipient's ability to *comply* with the demands of the subpoena; thus, the rule permits a court to quash the subpoena only if requiring the recipient to produce the requested documents or testimony would be "unreasonable or oppressive." As the government argued, the rule does not authorize district courts to quash a subpoena that is otherwise reasonable in scope and purpose[7] based on other issues, such as the method by which the person who requested the subpoena from the grand jury was appointed. *See* ECF No. 45, at 26-27.

The Court's reliance on *In re Grand Jury Proceeding*, 971 F.3d 40 (2d Cir. 2020) ("*Oberlander*") is misplaced. That decision did not broadly authorize courts to quash subpoenas based on a purported "lack of structural regularity." ECF No. 50, at 20. Instead, the focus of *Oberlander* was correctly on the feasibility of *compliance*. 971 F.3d at 50. It held that the subpoena in that case was a "nullity" because "it required Oberlander to produce documents to and appear before a grand jury that was no longer impaneled, in connection with an investigation that had expired," which rendered "[c]ompliance with such a subpoena … obviously impossible." *Id.* But, here, it is uncontested that the grand jury was properly impaneled when it issued the subpoenas and remains impaneled now.[8] Moreover, any defect in Mr. Sarcone's

---

[7] The Court did not reach NYOAG's claims that the subpoenas were unreasonable because they intruded on the state sovereignty, the NYOAG's First Amendment rights, and were overbroad and overly burdensome. ECF No. 50, at 1.

[8] The term of the grand jury that issued the subpoenas in this matter is set to expire on May 21, 2026.

10

appointment did not render NYOAG's compliance impossible, unreasonable, or oppressive.[9] NYOAG can produce the requested documents and records to the grand jury that requested them.

Interpreting *Oberlander* broadly to authorize quashing subpoenas based on purported structural defects in the U.S. Attorney's Office runs counter to the longstanding recognition that a grand jury's investigative powers are broad and should not be impeded by "minitrials and preliminary showings" on matters peripheral to the investigation. *United States v. R. Enters., Inc.*, 498 U.S. 292, 298–300 (1991); *United States v. Calandra*, 414 U.S. 338, 343 (1974); *see also Blair v. United States*, 250 U.S. 273, 282 (1919) (holding that grand jury witness "is not entitled to challenge the authority of the court or of the grand jury, provided they have a de facto existence and organization").

This is not to say that the recipient of a grand jury subpoena is without recourse to challenge the authority of the person who obtained the subpoena. Such challenges may be raised on appeal from an order of contempt. *See United States v.*

---

[9] In its Opinion and Order, the Court asserts that the cover letters to the subpoenas "direct" NYOAG to send responsive documents to Mr. Sarcone "personally." ECF No. 50, at 6, 21. This is incorrect. The subpoenas themselves make the documents and records returnable to *the grand jury* at the James T. Foley Courthouse in Albany and specify a date and time for the return. *See* ECF No. 1-5, at pgs.7, 11. Consistent with this directive, the cover letters explain that the subpoenas "require[e] your Office to produce the demanded documents and records to the grand jury." *Id.* at pgs. 6, 10. The cover letters then state: "[i]f you prefer to produce the materials by mail or email rather than appearing personally, you may do so" by the time specified on the subpoenas. The cover letters provide Mr. Sarcone's mailing and email addresses at the U.S. Attorney's Office for this purpose. *Id.* Neither the subpoenas nor the cover letters require NYOAG to produce the documents to Mr. Sarcone personally.

11

*Ryan,* 402 U.S. 530, 532 (1971) (where subpoena recipient believes subpoena is "unlawful," recipient "may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him"). But such claims are not a basis to quash the subpoena in the first instance. The unprecedented nature of the Court's decision necessarily raises serious legal questions that warrant a stay under the first prong of the *Nken* factors.

In sum, this Court should grant a stay of its Order pending appeal despite its disagreement with the government concerning the merits of such an appeal. In *Garcia*, the district court held against the government but recognized that the appeal in that case "present[ed] important questions of when and how the President or Attorney General can fill a vacancy in a U.S. Attorney position on an acting basis." *See Garcia* Stay Order, at 2. The district court concluded that such issues were "sufficiently serious to satisfy the first stay requirement" under *Nken. Id.* This Court should find the same.

    2.    **The Government Would Suffer Serious and Irreparable Harm.**

The government will be seriously and irreparably harmed without a stay. The improper disruption of the executive chain of command is a serious and irreparable injury. *Cf. Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (finding irreparable harm sufficient to support stay pending appeal where district court directed President "to recognize and work with an agency head whom he has already removed") (internal quotation marks omitted). Such harm is particularly relevant in this case because "[t]he doctrine of separation of powers requires judicial respect for the independence of the prosecutor." *United States v.*

12

*Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991). Because initiating a criminal case by presenting evidence before the grand jury is "an executive function within the exclusive prerogative of the Attorney General," *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975) (internal quotation marks omitted), an order disqualifying her designee from participating in grand jury proceedings "raises sharp separation-of-power concerns." *Rochon*, 873 F.2d at 174. And in ongoing criminal prosecutions, "the effect of any attorney disqualification order is fairly irreversible because it materially changes" the party's position, and if the case is allowed to proceed under such circumstances, no remedy will be available. *Williams*, 68 F.4th at 570 (quotations and brackets omitted); *see id.* ("After a final judgment, it will be too late for our court to undo any improper encroachment on the Executive branch's prosecutorial prerogatives.").

Under similar circumstances, the district court in *Garcia* found that a stay of its disqualification order was warranted under the "irreparable harm" prong of the *Nken* test. *See Garcia* Stay Order, at 3. As the district court explained:

> The Court's earlier decision disqualifies an Acting U.S. Attorney, appointed by the Attorney General, from supervising prosecutions initiated by the Executive Branch. While the Court is fully persuaded that its decision is correct as a matter of law, the decision nonetheless intrudes on Executive Branch prerogatives. If the Court's decision is not correct, such an intrusion is improper. Given the solemn respect our separate branches of government should have for each other, the mere possibility of an improper intrusion is sufficient in the Court's view to satisfy the irreparable harm prong of the stay inquiry. And a separation-of-powers harm is great enough to offset the lower showing made by the government on the first prong – serious questions rather than a likelihood of success on the merits.

13

*Id.* Given the "special solicitude" that courts must afford Executive branch prerogatives, *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982), this Court should likewise find that the government has satisfied the first two prongs of the *Nken* test and grant the government's motion for a stay.

### 3. A Stay Pending Appeal Would Not Cause NYOAG Substantial Injury.

A stay of the Court's decision would not cause NYOAG substantial injury, particularly because the government will not seek to enforce the subpoenas obtained by Mr. Sarcone in his capacity as Acting U.S. Attorney during the pendency of an appeal. Moreover, as the Court's Order makes clear, if the government were to "re-issue the subpoenas at the direction of a lawfully authorized attorney for the Federal Government, without Mr. Sarcone's involvement," NYOAG may renew its motion to quash. ECF No. 50, at 24. A stay of the Court's Order will merely preserve the status quo and will not cause any irreparable harm to NYOAG. *See Nken*, 556 U.S. at 429 (noting that "a stay simply suspends judicial alteration of the status quo") (internal quotation marks and alteration omitted).

### 4. A Stay Would Serve the Public Interest.

Finally, the public interest favors a stay. When the government is a party, the "irreparable harm" and "public interest" factors of the *Nken* test "merge." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2d Cir. 2020). As discussed above, the Court's Order in this case will cause irreparable harm to the government. Accordingly, there is necessarily a strong public interest to be served by granting a stay. Investigative and prosecutorial decision-making is "the special province of the Executive Branch," *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) and "Congress has

14

vested in the Attorney General the power to conduct the criminal litigation of the United States Government" and "the power to appoint subordinate officers to assist [her] in the discharge of [her] duties." *United States v. Nixon*, 418 U.S. 683, 694 (1974). Recognizing that "the conduct of federal criminal litigation … is an executive function with the exclusive prerogative of the Attorney General," the Ninth Circuit has observed that "[t]he separation of powers mandates judicial respect for the prosecutor's independence" and emphasized the importance of preserving the Executive Branch's control over criminal prosecutions. *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1366 (9th Cir. 1987) (quotations and brackets omitted). The public interest in ensuring this principle is foundational.

As the district court in *Garcia* concluded, while "[t]he public certainly has an interest in a government that turns square corners and complies with the statutory commands of the FVRA … it also has an interest in avoiding unnecessary confrontations between the executive and judicial branches of government." *Garcia* Stay Order, at 3. At the very least, the public interest factor under *Nken* does not weigh decidedly against granting a stay pending appeal.

15

## CONCLUSION

Based upon the above, this Court should grant a stay pending appeal of the Order quashing the subpoenas and disqualifying Mr. Sarcone.

DATED: January 24, 2026

/s/ *Richard Belliss*
RICHARD D. BELLISS
Assistant U.S. Attorney
Bar Roll #: 515295
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
E-mail: richard.belliss@usdoj.gov
Tel: (518) 431-0247