UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GRAND JURY SUBPOENAS TO THE OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL | Case No.: 1:25-mc-19 (LGS) |


### OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL'S
### OPPOSITION TO THE UNITED STATES' MOTION FOR A STAY PENDING APPEAL

OFFICE OF THE NEW YORK
STATE ATTORNEY GENERAL
Kumiki Gibson
Michael Jaffe
28 Liberty Street
New York, New York 10005

MUNGER, TOLLES & OLSON LLP
Donald B. Verrilli (Bar Roll # 105107)
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001

Brad D. Brian
Hailyn J. Chen
E. Martin Estrada
Victoria A. Degtyareva
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426

CAPEZZA HILL, LLP
Benjamin W. Hill (Bar Roll #514953)
30 South Pearl Street, Suite P-110
Albany, New York 12207

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................3

III.   LEGAL STANDARD.............................................................................................4

IV.    ARGUMENT ..........................................................................................................5

     A.     DOJ Is Not Likely to Succeed on the Merits. ............................................5

          1.     The Attorney General Cannot Appoint an Acting U.S. Attorney Merely by Naming a First Assistant. ............................................5

          2.     The Attorney General Cannot Appoint a *De Facto* Acting U.S. Attorney Through a Special-Attorney Designation. ....................7

          3.     This Court Properly Disqualified Sarcone and Quashed the Subpoenas. ................................................................................9

          4.     Rule 17 Authorized this Court to Quash the Subpoenas............................12

          5.     The Balance of Hardships Tips Against a Stay. ........................................13

     B.     DOJ Will Not Suffer Irreparable Harm Absent a Stay. .........................................13

          1.     DOJ Will Not Suffer Concrete Injuries from the Court's Order. ..............14

          2.     A Stay Would Harm the Separation of Powers. ........................................16

     C.     A Stay Would Substantially Harm OAG. ................................................18

     D.     A Stay Would Adversely Affect the Public Interest.................................20

     E.     Other Stay Orders Provide No Basis to Issue a Stay Here. .....................21

V.     CONCLUSION.....................................................................................................23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Am. Council of Learned Soc'y v. McDonald*,
    792 F. Supp. 3d 448 (S.D.N.Y. 2025).................................................................20

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
    35 F.4th 1328 (Fed. Cir. 2022) ...........................................................................10

*Carollo v. Herman*,
    84 F. Supp. 2d 374 (E.D.N.Y. 2000) ..................................................................15

*Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*,
    948 F.3d 148 (D.C. Cir. 2020) ............................................................................19

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010).............................................................................5, 13

*Collins v. Yellen*,
    594 U.S. 220 (2021).............................................................................................17

*Dellinger v. Bessent*,
    2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ................................................15, 16

*Doe v. Trump*,
    6 F.4th 400 (2d Cir. 2021) ..................................................................................13

*Expedia, Inc. v. United Airlines*,
    2019 WL 1499269 (S.D.N.Y. Apr. 5, 2019).......................................................14

*In re Grand Jury Proceeding*,
    971 F.3d 40 (2d Cir. 2020)............................................................................12, 13

*In re Grand Jury Proceedings*,
    486 F.2d 85 (3d Cir. 1973)..................................................................................19

*In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*,
    767 F.2d 26 (2d Cir. 1985)..................................................................................12

*In re Grand Jury Subpoena of Rochon*,
    873 F.2d 170 (7th Cir. 1989) ..............................................................................16

*Grundmann v. Trump*,
    786 F. Supp. 3d 188 (D.D.C. 2025)....................................................................15

*Hecht Co. v. Bowles*,
    321 U.S. 321 (1944).............................................................................................22

*League of Women Voters of the U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........................................................................20

*LM-M v. Cuccinelli*,
442 F. Supp. 3d 1 (D.D.C. 2020) ..............................................................6, 9

*Lucia v. SEC*,
585 U.S. 237 (2018) ................................................................................10, 19

*Mar-Can Transp. Co., Inc. v. Local 854 Pension Fund*,
2024 WL 3887191 (S.D.N.Y. Aug. 21, 2024) ..............................................6

*Nat. Res. Def. Council, Inc. v. FDA*,
884 F. Supp. 2d 108 (S.D.N.Y. 2012) ..........................................................4

*Nat'l Treas. Emps. Union v. Trump*,
2025 WL 1441563 (D.C. Cir. May 16, 2025) ..............................................14

*New York v. DHS*,
969 F.3d 42 (2d Cir. 2020) ...........................................................................21

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................ 4, *passim*

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) ............................................................................ 2, *passim*

*R.I. State Council of Churches v. Rollins*,
158 F.4th 304 (1st Cir. 2025) ......................................................................21

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024) .......................................................................5, 9

*SW Gen. v. NLRB*,
796 F.3d 67 (D.C. Cir. 2015) .........................................................................9

*Texas v. United States*,
787 F.3d 733 (5th Cir. 2015) ......................................................................14

*Trump v. Vance*,
481 F. Supp. 3d 161 (S.D.N.Y. 2020) ..........................................................13

*United States v. Calk*,
87 F.4th 164 (2d Cir. 2023) .........................................................................12

*United States v. Comey*,
2025 WL 3266932 (E.D. Va. Nov. 24, 2025) ............................... 1, *passim*

*United States v. Garcia,*
    2025 WL 2784640 (D. Nev. Sep. 30, 2025) ................................................ 1, *passim*

*United States v. Garcia,*
    2025 WL 2985284 (D. Nev. Oct. 23, 2025) ..............................................16, 18, 21

*United States v. Giraud,*
    160 F.4th 390 (3d Cir. 2025) ................................................................. 1, *passim*

*United States v. James,*
    2025 WL 3266931 (E.D. Va. Nov. 24, 2025) ............................................ 1, *passim*

*United States v. Jefferson,*
    2026 WL 145277 (E.D. Va. Jan. 20, 2026) ...........................................................20

*United States v. R. Enters.,*
    498 U.S. 292 (1991) ...............................................................................................12

*United States v. Ramirez,*
    2025 WL 3019248 (C.D. Cal. Oct. 28, 2025) .......................................... 1, *passim*

*United States v. Ramirez-Martinez,*
    2026 WL 113431 (D.N.M. Jan. 14, 2026) ................................................ 2, *passim*

*United States v. Sells Eng'g, Inc.,*
    463 U.S. 418 (1983) ...............................................................................................19

*United States v. Simpson,*
    927 F.2d 1088 (9th Cir. 1991) ...............................................................................16

*United States v. Trump,*
    740 F. Supp. 3d 1245 (S.D. Fla. 2024) .............................................................9, 11

*United States v. Williams,*
    68 F.4th 564 (9th Cir. 2023) ..................................................................................16

*Washington v. Trump,*
    847 F.3d 1151 (9th Cir. 2017) ...............................................................................14

*Widakuswara v. Lake,*
    773 F. Supp. 3d 46 (S.D.N.Y. 2025) .....................................................................13

**FEDERAL STATUTES**

5 U.S.C. § 3345 ................................................................................................................6

5 U.S.C. § 3347 ................................................................................................................7

28 U.S.C. § 515 ................................................................................................................7

**FEDERAL RULES**

Fed. R. Crim. P. 17 ................................................................................................12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I .............................................................................................21

U.S. Const. art. II, § 2, cl. 2 ............................................................................. 1, *passim*

**OTHER AUTHORITIES**

Robert H. Jackson, U.S. Att'y Gen., Address to the Second Annual
    Conference of United States Attorneys: The Federal Prosecutor
    (Apr. 1, 1940), *available at* https://www.justice.gov/sites/default/files/ag/
    legacy/2011/09/16/04-01-1940.pdf (last visited Jan. 30, 2026) ................................17, 19, 20

11A Wright & Miller's Federal Practice & Procedure § 2948.1 (3d ed. 2018)............................15

## I.    **<u>INTRODUCTION</u>**

As part of the Administration's ongoing retribution campaign against the Office of the New York State Attorney General ("OAG"), the U.S. Department of Justice ("DOJ") seeks extraordinary, discretionary relief for the sole purpose of allowing an illegitimate Acting U.S. Attorney—who has no compunction about wielding the might of the federal criminal justice system "against a perceived rival of the President," Order on Mot. to Quash ("Order") 23—to continue to oversee alleged criminal investigations into OAG for legal actions (all successful) taken against Donald Trump, as a private businessperson, and his organizations and political allies.  It does so under the guise of raising "serious questions" of law and claims that this Court's order offends the separation of powers.  These arguments are meritless.

Every court in the country to have considered DOJ's position has rejected it as a transparent attempt to circumvent the Appointments Clause and the Federal Vacancies Reform Act ("FVRA").  *See* Order 2; *see also United States v. Giraud*, 160 F.4th 390, 407 (3d Cir. 2025), *reh'g en banc denied* (3d Cir. Jan. 26, 2026) (affirming Alina Habba was improperly appointed in the District of New Jersey); *United States v. Garcia*, 2025 WL 2784640, at *18 (D. Nev. Sep. 30, 2025) (finding Sigal Chattah was improperly appointed in the District of Nevada); *United States v. Ramirez*, 2025 WL 3019248, at *20 (C.D. Cal. Oct. 28, 2025) (finding Bilal Essayli was improperly appointed in the Central District of California); *United States v. James*, 2025 WL 3266931, at *13 (E.D. Va. Nov. 24, 2025) (finding Lindsey Halligan was improperly appointed in the Eastern District of Virginia); *United States v. Comey*, 2025 WL 3266932, at *15 (E.D. Va. Nov. 24, 2025) (same).  And just days after this Court issued its ruling, the District Court for the District of New Mexico similarly found that Ryan Ellison had been improperly

appointed in that district. *United States v. Ramirez-Martinez*, 2026 WL 113431, at *26 (D.N.M. Jan. 14, 2026).

This uniform body of authority confirms that it is DOJ's attempted "statutory end-run" around the Appointments Clause, Order 23—and not this Court's well-reasoned order—that threatens the separation of powers. "The Senate's advice and consent power is a critical 'structural safeguard of the constitutional scheme.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017). And this Court's order limiting the Administration's ability to "unilaterally install[]" U.S. Attorneys to serve as "obsequious instruments of [the President's] pleasure," Order 10 (quoting The Federalist No. 76, at 394-95 (Alexander Hamilton)), is crucial to *maintaining* the separation of powers.

All of the relevant factors weigh against a stay here:

*First*, DOJ's rehashing of arguments that have already been soundly rejected by multiple courts cannot establish a likelihood of success on the merits or a serious question of law.

*Second*, DOJ's generalized appeals to the separation of powers come nowhere close to establishing that DOJ will be irreparably harmed absent a stay. Indeed, the harm to the separation of powers flows in the other direction, as harm is presumed from the sort of Appointments Clause violation found here.

*Third*, DOJ entirely ignores the grave harm that would be inflicted on OAG, and on the State of New York, by allowing John Sarcone to resume his politically motivated criminal investigations to further President Trump's campaign of retribution against his political opponents—especially when the Administration has brazenly continued that campaign against N.Y. Attorney General Letitia James and her office even after this Court issued its order.

*Fourth*, the public interest unequivocally favors checking the Administration's seemingly endless attempts to circumvent the Constitution's structural safeguards.

The Motion for a Stay Pending Appeal should be denied.

## II.    **BACKGROUND**

Since this Court considered and granted OAG's Motion to Quash Grand Jury Subpoenas ("Motion to Quash"), DOJ has continued to perpetuate its campaign to harass and retaliate against Attorney General James and her office.[1]  After a federal court dismissed the federal indictment of Attorney General James obtained by an improperly-appointed Acting U.S. Attorney, *James*, 2025 WL 3266931, at *13, DOJ has repeatedly tried and failed to prosecute her on an ever-expanding set of baseless theories.  On December 4, 2025, the same day that DOJ presented oral argument to this Court defending the unlawful subpoenas issued to OAG, DOJ renewed its attempts to prosecute Attorney General James for mortgage fraud.  Decl. of Hailyn Chen in Support of Stay Opposition ("Chen Decl.") ¶¶ 12-13.  According to multiple sources familiar with the matter, a grand jury in the Eastern District of Virginia refused to return an indictment.  *Id.*  The following week, DOJ sought another indictment for the same charges (this time in a *new* location) as well as a new additional charge.  *Id.* ¶¶ 13-15.  A grand jury in Alexandria blocked that attempt too, once again refusing to return an indictment against Attorney General James on any count.  *Id.* ¶¶ 9, 13-15.

Confronted with back-to-back failed indictments, DOJ has turned its attention to yet another absurd source of supposed criminal activity by Attorney General James.  In January, anonymous sources reported that DOJ opened a new investigation—also led by Trump's long-

---

[1] This Background section presents new developments that have taken place since the hearing on OAG's Motion to Quash Grand Jury Subpoenas.

time supporter, Edward Martin—into past financial transactions involving Attorney General James and her hairdresser, Iyesata Marsh.  Chen Decl. ¶ 16.  There has been no allegation of wrongdoing on the part of Attorney General James or her office.

As before, the Administration has not even attempted to hide the retributory motivations behind these criminal investigations.  *See* Mot. to Quash 13-14; Reply in Supp. of Mot. to Quash 3-5.  White House Chief of Staff Susie Wiles openly stated that "there may be an element of [retribution] from time to time" in Trump's attempts to pursue his political opponents, and that "when there's an opportunity" for retribution, Trump "will go for it."  Chen Decl. ¶ 10.  And although Wiles attempted to categorize some of the investigations into Trump's opponents as something other than retribution, when asked about the mortgage fraud investigation of Attorney General James, Wiles admitted: "that might be the one retribution."  *Id.*

## III.    <u>LEGAL STANDARD</u>

The showing required to "justify the extraordinary remedy" of a stay pending appeal is "stringent."  *Nat. Res. Def. Council, Inc. v. FDA*, 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012).  A stay is not issued as a "matter of right, even if irreparable injury might otherwise result."  *Nken v. Holder*, 556 U.S. 418, 433 (2009).  Four factors guide a court's decision whether to take this exceptional action: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Id.* at 434 (citation omitted).  As the party seeking the stay, DOJ "bears a heavy burden" to establish that those four factors favor its requested relief.  *Nat. Res. Def. Council*, 884 F. Supp. 2d at 122.  It has not carried that burden here.

4

IV.    **ARGUMENT**

A.    **DOJ Is Not Likely to Succeed on the Merits.**

To make a "strong showing" of success on the merits, *Nken*, 556 U.S. at 434, DOJ must establish either (1) that it is "more likely than not to prevail on the merits" or (2) that there are "sufficiently serious questions going to the merits" and that the "balance of hardships tip[s] decidedly" in its favor, *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).  To show that a "serious question" exists, DOJ must raise a genuine, substantive doubt about whether this Court's ruling was correct.  *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 83 (2d Cir. 2024) (movant must "raise[] 'questions going to the merits'" that are "serious, substantial, difficult and doubtful").  And because DOJ "must additionally establish that 'the balance of hardships tips *decidedly*' in its favor, its overall burden is no lighter" under the serious questions standard.  *Citigroup Glob. Mkts.*, 598 F.3d at 35 (emphasis in original).

DOJ does not—and cannot—come close to satisfying those stringent requirements.  Courts across the country have resoundingly rebuked its position.  And in trying to establish its likelihood to succeed on the merits, DOJ simply rehashes contentions that this Court and numerous others have already evaluated and rejected.  Nor does DOJ come close to showing that the balance of hardships tips "decidedly" in its favor.

1.    **The Attorney General Cannot Appoint an Acting U.S. Attorney Merely by Naming a First Assistant.**

Every court to have addressed the question has held that the Attorney General may not appoint a new first assistant *after* the vacancy of the U.S. Attorney position arises and have that later-appointed first assistant automatically become the Acting U.S. Attorney under 5 U.S.C.

§ 3345(a)(1).  *See Giraud*, 160 F.4th at 397; *Garcia*, 2025 WL 2784640, at *9; *Ramirez*, 2025 WL 3019248, at *3; *Ramirez-Martinez*, 2026 WL 113431, at *10.

Indeed, the issue is not close.  The "text, structure, and context" of the FVRA make clear that the automatic succession provision in 5 U.S.C. § 3345—under which the first assistant to a vacant office may perform the functions and duties of that office in a temporary, acting capacity, 5 U.S.C. § 3345(a)(1)—applies *only* to the individual *already* serving as first assistant when the vacancy arises.  Order 13; *see Giraud*, 160 F.4th at 400; *Giraud*, 795 F. Supp. 3d at 586; *Garcia*, 2025 WL 2784640, at *6-9; *Ramirez*, 2025 WL 3019248, at *4; *Ramirez-Martinez*, 2026 WL 113431, at *14; *LM-M v. Cuccinelli*, 442 F. Supp. 3d 1, 25-27 (D.D.C. 2020).

Likewise, courts, including the Third Circuit, agree with this Court's conclusion that DOJ's interpretation of the FVRA, if followed, would render subsections 3345(a)(2) and (a)(3) superfluous.  *See Giraud*, 160 F.4th at 399; *Giraud*, 795 F. Supp. 3d at 587; *Garcia*, 2025 WL 2784640, at *5-6; *Ramirez*, 2025 WL 3019248, at *6; *Garcia*, 2025 WL 2784640, at *5; *LM-M*, 442 F. Supp. 3d at 28-29.  These decisions reject DOJ's argument—which it repeats here—that, under its interpretation of the FVRA, sections 3345(a)(2) and (a)(3) still "play a distinct role" in certain narrow circumstances, when the first assistant position requires Senate confirmation or when the President wishes to leave the current first assistant in place.  *See* Order 15 n.8; *Giraud*, 160 F.4th at 399; *Giraud*, 795 F. Supp. 3d at 588; *Garcia*, 2025 WL 2784640, at *6; *LM-M*, 442 F. Supp. 3d at 28-29.  In light of this authority, Sarcone's appointment as the purported Acting U.S. Attorney was obviously unlawful.  *Cf. Mar-Can Transp. Co., Inc. v. Local 854 Pension Fund*, 2024 WL 3887191, at *11 n.13 (S.D.N.Y. Aug. 21, 2024) (noting a "split in authority may constitute a serious question as to the merits").

### 2.    The Attorney General Cannot Appoint a *De Facto* Acting U.S. Attorney Through a Special-Attorney Designation.

DOJ's invocation of Sarcone's appointment as "Special Attorney" also fails to establish any serious question.  As a preliminary matter, Sarcone directed issuance of the subpoenas as "Acting United States Attorney," not as "Special Attorney," so his appointment as "Special Attorney" under 28 U.S.C. § 515 does not cure the defect.  Order 22 (observing that "[i]n six pages, the two subpoenas and their supporting materials identify Mr. Sarcone as 'Acting U.S. Attorney' six different times").  Even if Sarcone had acted as "Special Attorney," *every* court that has addressed this question, including the Third Circuit, has held that the Attorney General may not use a "Special Attorney" designation for the purpose of appointing a *de facto* Acting U.S. Attorney.  Order 19; *see Giraud*, 160 F.4th at 403 ("This *de facto* U.S. Attorney-by-delegation theory is plainly prohibited by the FVRA's exclusivity provision."); *Garcia*, 2025 WL 2784640, at *14 (same); *Ramirez*, 2025 WL 3019248, at *11 (same); *Ramirez-Martinez*, 2026 WL 113431, at *10 (same).  As this Court recognized, a general delegation statute, such as § 515, cannot be used to circumvent the FVRA's procedures; to the contrary, one of the FVRA's provisions expressly provides that its procedures "are the exclusive means for temporarily authorizing an acting official" to fill an office of the Executive Branch.  5 U.S.C. § 3347(a); Order 18.  Congress included this provision "specifically to prevent agencies from using general delegation authority"—such as § 515—to "bypass the FVRA."  Order 18 (citing *SW Gen., Inc.*, 580 U.S. at 294-95).

The record before the Court makes clear that the sole purpose of Sarcone's "Special Attorney" designation was to appoint him a *de facto* U.S. Attorney.  Sarcone's appointment letter purports to "authorize[]" him to "conduct . . . any kind of legal proceedings . . . which United States Attorneys are authorized to conduct," DOJ Opp. to Mot. to Quash Ex. 14 at 1—a

purported authorization that this Court found encompassed "the full range of the office's powers." Order 19. DOJ's form requesting approval for this "temporary appointment" specified that the "reason" for the appointment was to allow Sarcone to "serv[e] as Acting U.S. Attorney for a 210-day period (5 U.S.C. 3346(a)(1))." DOJ Opp. to Mot. to Quash Ex. 19 at 3. And, as the Court noted, DOJ has "conceded that nothing in the record supports Mr. Sarcone's appointment being 'limited . . . to some discrete set of matters or some subset of all the U.S. Attorney's powers.'" Order 19.

Although two district courts subsequently found the unlawful Acting U.S. Attorneys could perform the nonexclusive duties of U.S. Attorneys as "Special Attorneys," *Ramirez*, 2025 WL 3019248, at *18; *see Ramirez-Martinez*, 2026 WL 113431, at *18, neither decision calls into question the Court's order here. In *Ramirez-Martinez*, the court's holding was based, in part, on its finding that the record did not "demonstrate that the only purpose of Mr. Ellison's designation was to circumvent [the FVRA]" given his nearly decade-long tenure in the U.S. Attorney's Office prior to his appointment, "which spanned multiple executive administrations." 2026 WL 113431, at *18.[2] The same cannot be said here: Sarcone had zero prosecutorial experience prior to his appointment and has since become one of the Administration's go-to lawyers for carrying out the President's vendettas. Chen Decl. ¶ 11 (reporting that Sarcone agreed to defend against a lawsuit filed by Maurene Comey after several other Department of Justice offices refused to do so); *id.* ¶ 17. The *Ramirez* court did not consider whether the sole purpose of the improper appointment in that case was to circumvent the FVRA, and, in any event, that decision cannot

---

[2] *Ramirez-Martinez* is also distinguishable because there the Attorney General "delegate[d] only the 'delegable, nonexclusive functions of the United States Attorney for the District of New Mexico.'" 2026 WL 113431, at *19. Thus, in that case—and unlike in this dispute—a narrow delegation order was on the books that did not purport to confer "the full range of the office's powers." Order 19.

overcome the weight of authority to the contrary, including from the only appellate court to have considered the issue.  *See Giraud*, 160 F.4th at 403.

For all of those reasons, the motion to stay fails to raise any questions regarding whether Sarcone's appointment violated the FVRA that are "serious, substantial, difficult, and doubtful," *State Farm*, 120 F.4th at 83, and fails to show that DOJ is more likely than not to prevail on the merits, *see Nken*, 556 U.S. at 434.

> ### 3.    This Court Properly Disqualified Sarcone and Quashed the Subpoenas.

Every court to have addressed the question has held that when an unconstitutionally appointed prosecutor plays an instrumental role in driving an investigation forward, that individual's unlawful acts must be voided, and they must be disqualified from any future participation.  *See Comey*, 2025 WL 3266932, at *10; *James*, 2025 WL 3266931, at *9; *United States v. Trump*, 740 F. Supp. 3d 1245, 1303 (S.D. Fla. 2024).  Outside the U.S. Attorney context, courts likewise have set aside actions taken under appointments that violate the FVRA. *See* Order 23-24 (citing cases); *SW Gen. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015); *LM-M*, 442 F. Supp. 3d at 34.  That consensus of authority confirms that there is no serious question here about either Sarcone's disqualification or the quashing of the subpoenas he issued.

DOJ makes no headway re-arguing that Sarcone's disqualification was not a proper remedy.  Mot. 7-9.  Its arguments boil down to the assertion that even if the delegation to Sarcone is unlawful, this Court should allow him to enforce the subpoenas and oversee investigations into OAG because the U.S. Attorney General *could have* lawfully delegated those powers to him.  As a threshold matter, this harmless-error-flavored argument conflicts with the Supreme Court's directive that the "'appropriate' remedy" for an action "tainted with an appointments violation" is a "new" action, not an assessment of whether the decisionmaker could

have taken the same action if he had been appointed differently. *Lucia v. SEC*, 585 U.S. 237, 251 (2018); *see also id.* at 251 n.5 ("Appointments Clause remedies are designed . . . to create incentives to raise Appointments Clause challenges," an objective that is "best accomplish[ed] . . . by providing a successful litigant with a new [decisionmaker].") ; Order 23-24.

Additionally, DOJ's primary authority for its position—*Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022)—offers DOJ no support. In *Arthrex*, the Federal Circuit upheld the denial of a request for rehearing of a decision by the Patent Trial and Appeal Board. *Id.* at 1332. Such determinations are generally made by the Director or Deputy Director of the Patent and Trademark Office, but both positions were vacant. *Id.* at 1332-33. Accordingly, the Commissioner for Patents made the decision instead. *Id.* at 1332. The Federal Circuit upheld that action even though the Commissioner had not been appointed to serve as Director under the FVRA, reasoning that the "Director's authority to decide requests for rehearing Board decisions is delegable." *Id.* at 1339.

But *Arthrex* does not provide a reason for this Court to revisit its decision to disqualify Sarcone. For one thing, *Arthrex*'s reasoning is fatally flawed—in *Giraud*, the Third Circuit rejected it as textually unsound. *See Giraud*, 160 F.4th at 405. On an even more basic level, *Arthrex* is off-point: the delegation at issue there did not suffer from the defect that Sarcone's designation does. The *Arthrex* delegation conferred only the "non-exclusive functions and duties of the [Director]" on the Commissioner of Patents. *Arthrex*, 35 F.4th at 1332 (alteration in original). In other words, it did not purport to delegate "the full range of the officer's powers" or "use general delegation" to fill a Senate-confirmed position. Order 19. It thus provides no support for DOJ's suggestion that Sarcone can permissibly continue to order grand jury subpoenas and supervise investigations into OAG. A case holding that a subordinate officer may

10

exercise non-exclusive powers pursuant to a lawful delegation does not support Sarcone's attempt to exercise *any* powers pursuant to a delegation that is fundamentally infirm.

Although some other district courts facing similar issues have declined to enter disqualification orders or to dismiss indictments, in all of those cases, the purported Acting U.S. Attorneys had no personal involvement in the defendants' prosecution. *Giraud*, 795 F. Supp. 3d at 605-06; *Ramirez*, 2025 WL 3019248, at *15 n.23; *Ramirez-Martinez*, 2026 WL 113431, at *22. The opposite is true here—there is *every* indication that Sarcone was the instigator of these subpoenas. He personally signed the cover letters, he requested the subpoenas in his own name, and the cover letters direct OAG to send responsive documents to Sarcone personally. Order 5-6; Decl. of Roxanne Wild Supp. OAG's Mot. to Quash Exs. 1-2. Indeed, DOJ has not tried to argue—let alone submit evidence—that Sarcone played no role in the challenged actions.

The district court's reasoning on this point in *Ramirez-Martinez*, which was issued just two weeks ago, is instructive. There, the defendants argued that dismissal of the indictment was appropriate under *United States v. Trump*, a decision in the Southern District of Florida that dismissed an indictment against President Trump on the ground that Special Counsel Jack Smith was improperly appointed. 740 F. Supp. 3d 1245. The *Ramirez-Martinez* court found that *Trump* was distinguishable because, in that case, the "indictment had been signed by Special Counsel Smith alone." *Ramirez-Martinez*, 2026 WL 113431, at *22. Moreover, Smith's "involvement in the case had been essentially ubiquitous, and critically included his seeking of the Superseding Indictment on which the proceedings hinged." *Id.* Because here, too, Sarcone's "involvement" is "essentially ubiquitous," "the appropriate remedy is invalidation of [his] *ultra vires* acts." *Trump*, 740 F. Supp. 3d at 1303; *see also James*, 2025 WL 3266931, at *10 n.16

11

(dismissing indictment obtained by invalidly appointed Acting U.S. Attorney because "she presented the indictment to the grand jury alone"); *Comey*, 2025 WL 3266932, at *13 (similar).

### 4.    Rule 17 Authorized this Court to Quash the Subpoenas.

DOJ reprises its contention that Rule 17 of the Federal Rules of Criminal Procedure does not empower a district court to quash a subpoena that has been requested by an unconstitutionally appointed prosecutor. Mot. 9-12. That argument is baseless. Rule 17(c)(2) authorizes a district court to quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Requiring compliance with a subpoena issued by an individual who lacks any authority to issue it is, by definition, both unreasonable and oppressive. Order 21.

Doctrine clearly supports that commonsense intuition. Rule 17(c) is one of the only checks on the grand jury's powers. *United States v. R. Enters.*, 498 U.S. 292, 299 (1991). As such, it is interpreted flexibly. *Id.* at 299-300. The standard is capacious enough to authorize a court to quash a subpoena when necessary to prevent "abuse of the grand jury process." *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 30 (2d Cir. 1985); Order 20 ("[C]ourts may not ignore possible abuse of the grand jury process." (quoting *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023))). This authority under Rule 17(c) allows courts to discharge their duty to guard against the risk that the grand jury will be "misused by the prosecutor." *Simels*, 767 F.2d at 29. And that is exactly how this Court used Rule 17(c) here—to ensure that the grand jury was not used as the "private tool of a prosecutor," especially a prosecutor "who [was] not lawfully appointed." Order 21 (quoting *Calk*, 87 F.4th at 186).[3]

---

[3] DOJ objects to the Order's citation to *In re Grand Jury Proceeding* (*Oberlander*), 971 F.3d 40 (2d Cir. 2020), arguing that this Court misread it to "authorize courts to quash subpoenas based on a purported 'lack of structural regularity.'" Mot. 10-11. But DOJ's outsized emphasis on *Oberlander* is perplexing. As OAG likely does not need to point out to this Court, the Court's

### 5.     The Balance of Hardships Tips Against a Stay.

Finally, to the extent DOJ argues that it can meet the "serious questions" standard instead of a "likelihood of success on the merits," it has failed to show that the "balance of hardships tip[s] decidedly" in its favor.  *Citigroup Glob. Mkts.*, 58 F.3d at 35.  Indeed, DOJ does not even try to apply this balancing test in its motion.  By failing to do so, DOJ forfeits its ability to rely on the "serious questions" standard.  *See Doe v. Trump*, 6 F.4th 400, 410 (2d Cir. 2021) (a party does not "adequately raise" an argument by "merely typing out the key words or merely incanting the key phrase without offering any argument or explanation of the point" (citation modified)).  In any event, as explained below, DOJ could not show that the balance of hardships tips in its favor, let alone "decidedly" so, *Citigroup Glob. Mkts.*, 58 F.3d at 35, because DOJ has failed to establish that it would suffer any irreparable harm absent a stay.  *See infra* Section IV.B.  But a stay would gravely injure OAG.  *See infra* Section IV.C.  There is no weighing needed; the hardships are entirely on one side of the scale.

### B.     <u>DOJ Will Not Suffer Irreparable Harm Absent a Stay.</u>

"To demonstrate irreparable harm, the movant must show 'an injury that is neither remote nor speculative, but actual and imminent and [that] cannot be remedied by an award of monetary damages.'"  *Trump v. Vance*, 481 F. Supp. 3d 161, 164 (S.D.N.Y. 2020).  This requirement is "the single most important prerequisite for the issuance of emergency relief."  *Widakuswara v. Lake*, 773 F. Supp. 3d 46, 59 (S.D.N.Y. 2025).  DOJ has failed to show that it would suffer any irreparable harm here.

---

order primarily cited *Oberlander* in support of a different proposition:  that DOJ may not salvage an improper subpoena by arguing that a proper subpoena could issue.  Order 22-23.

### 1.    DOJ Will Not Suffer Concrete Injuries from the Court's Order.

DOJ's sole basis for its alleged irreparable harm is a general invocation of "separation of powers" concerns.  Mot. 12-15.  But this abstract appeal is insufficient, in and of itself, to establish irreparable harm.  The "United States [cannot] demonstrate[] that it 'will be irreparably injured absent a stay'" by merely "claim[ing] that [a court] order offends separation of powers." *Texas v. United States*, 787 F.3d 733, 767-68 (5th Cir. 2015); *see also Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017).  Instead, DOJ must point to concrete consequences for the Executive Branch.  *Compare Texas*, 787 F.3d at 768 (denying stay pending appeal because district court order would not meaningfully disrupt Department of Homeland Security operations), *with Nat'l Treas. Emps. Union v. Trump*, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025) (finding the federal government suffered irreparable harm from a preliminary injunction because it "tie[d] the government's hands" and "eliminate[d] the President's control over the decision to pause implementation of the Executive Order").

DOJ cannot make such a showing.  DOJ represents that it "will not seek to enforce the subpoenas obtained by Mr. Sarcone . . . during the pendency of an appeal."  Mot. 14. Accordingly, the only effect of this Court's order on DOJ is that Sarcone himself is "disqualified from any further involvement in prosecuting or supervising any investigation pertaining to" *New York v. Trump* and *New York v. NRA*.  Order 24.  That directive does not prevent any investigation from proceeding so long as it is supervised by someone else.  Nor does it bar Sarcone from participating in other unrelated investigations.[4]  And the impact of the order "will

---

[4] Sarcone may (wisely) choose to refrain from participating in other investigations, as the Court's reasoning strongly suggests that his activities are unlawful across the board.  But any such voluntary action on his part is irrelevant to the stay calculus.  *See Expedia, Inc. v. United Airlines*, 2019 WL 1499269, at *6 (S.D.N.Y. Apr. 5, 2019) ("'[S]elf-inflicted' harms are not

be particularly short-lived" because Sarcone's tenure expires in under two weeks. *Grundmann v. Trump*, 786 F. Supp. 3d 188, 193 (D.D.C. 2025) (no irreparable harm where the term of Federal Labor Relations Authority employee expired within three weeks); DOJ Opp. to Mot. to Quash Ex. 19 at 3; Order 4-5 (noting that Sarcone's appointment expires on February 10, 2026). DOJ's own lack of urgency in filing a notice of appeal and seeking a stay—more than two weeks after the Court issued its order—confirms there is no real risk of irreparable injury here. *See Carollo v. Herman*, 84 F. Supp. 2d 374, 379 (E.D.N.Y. 2000) (movant failed to show irreparable injury because he "delay[ed] in seeking relief," which "tends to indicate at least a reduced need for such drastic, speedy action").

For those reasons, this Court's order does not resemble the preliminary injunction at issue in *Dellinger v. Bessent*, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025), the decision on which DOJ relies. Mot. 12. The court in *Dellinger* found that the federal government established irreparable harm for purposes of a stay pending appeal when the district court's injunction restored Special Counsel Hampton Dellinger to office after he was fired by the President. *Id.* at *1, *4. It reasoned that the preliminary injunction directed the President to "recognize and work with an agency head whom he ha[d] already removed." *Id.* at *3. And it also found that the "potential injury to the government of both having its designated Acting Special Counsel sidelined and unable to act while also having to try and unravel Dellinger's actions [was] substantial." *Id.* at *4.

By contrast, the consequences of allowing this Court's order to remain in place are far more constrained. The order does not force the President to work with anyone he has fired, and

---

considered irreparable." (citing 11A Wright & Miller's Federal Practice & Procedure § 2948.1 (3d ed. 2018))).

it does not "sideline" anyone.  *Id.*  The order merely cuts Sarcone's caseload by two, and he is set to depart in a matter of weeks in any event.  Nor will there be anything to "unravel" when the appeal is resolved.  *Id.*  Any "intru[sion] on Executive Branch prerogatives," *United States v. Garcia*, 2025 WL 2985284, at *2 (D. Nev. Oct. 23, 2025) (issuing stay), is largely theoretical and simply does not amount to irreparable harm.

DOJ offers a string of citations to cases discussing the importance of maintaining separation between the Judicial Branch and the prosecutorial function, but none supports the issuance of a stay.  Mot. 12-13 (citing *United States v. Williams*, 68 F.4th 564 (9th Cir. 2023); *United States v. Simpson*, 927 F.2d 1088 (9th Cir. 1991); *In re Grand Jury Subpoena of Rochon*, 873 F.2d 170 (7th Cir. 1989)).  None of those cases concerned a request for a stay pending appeal, and each is factually distinguishable.  *Williams* held that a court's order disqualifying *all 180* prosecutors in the U.S. Attorney's Office of the District of Arizona was immediately appealable.  68 F.4th at 569.  *Rochon* similarly held that an order disqualifying *the U.S. Attorney General* was immediately appealable.  873 F.2d at 173.  And *Simpson* did not even concern any prosecutorial disqualifications, but a district court's order dismissing an indictment.  927 F.2d at 1089.  These cases simply have no bearing on whether an order disqualifying one prosecutor in a single district from two investigations warrants the extraordinary remedy of a stay pending appeal, especially where DOJ has an opportunity to obtain immediate review of the disqualification:  the appeal it has already filed.  *See* Mot. 1 n.2.

### 2.    A Stay Would Harm the Separation of Powers.

Even if mere invocation of separation of powers were enough to establish irreparable harm (which it is not), a full accounting of the separation-of-powers harms in this case cuts forcefully *against* a stay.  Sarcone's appointment as Acting U.S. Attorney was authorized by neither Senate confirmation nor statute.  Accordingly, he "can[not] lawfully exercise the

statutory power of [that] office *at all*." *Collins v. Yellen*, 594 U.S. 220, 266 (2021) (Thomas, J. concurring) (emphasis added). By continuing to carry out those responsibilities, he continues to violate the Appointments Clause. *See id.*; *James*, 2025 WL 3266931, at *8. That violation of one of the "critical 'structural safeguard of the constitutional scheme,'" *SW Gen.*, 580 U.S. at 293, works grave harm on the separation of powers.

As this Court has already recognized, Sarcone's continued participation in these investigations is a manifestation of the precise sort of executive self-aggrandizement that the Appointments Clause was meant to police. The Appointments Clause was devised as a "guard against 'a spirt of favoritism' in federal appointments." Order 10 (quoting *SW Gen.*, 580 U.S. at 293). It is designed to "prevent[] the President from unilaterally installing 'candidates who ha[ve] no other merit than that . . . of being, in some way or other, personally allied to [the President], or of possessing the necessary insignificance and pliancy to render them the obsequious instruments of his pleasure.'" *Id.* (quoting The Federalist No. 76, at 394-95 (Alexander Hamilton)). And the safeguards of the Clause are particularly essential in the context of naming U.S. Attorneys, who wield an "immense power to strike at citizens, not with mere individual strength, but with all the force of government itself." Robert H. Jackson, U.S. Att'y Gen., Address at the Second Annual Conference of United States Attorneys: The Federal Prosecutor (Apr. 1, 1940), at 2.[5]

In other words, the Appointments Clause was designed to prevent exactly what has happened here. The President, through the U.S. Attorney General, has attempted a "statutory end-run" around *both* the FVRA and the Appointments Clause. Order 23. And he has done so in

---

[5] *Available at* https://www.justice.gov/sites/default/files/ag/legacy/2011/09/16/04-01-1940.pdf (last visited Jan. 30, 2026).

order to install an Acting U.S. Attorney who does not hesitate to use the might of the federal

criminal justice system "against a perceived rival of the President." *Id.* There can hardly be a

clearer example of a need for a "guard against the appointment of unfit characters." *Id.* at 10

(quoting *SW Gen.*, 580 U.S. at 293). Under these circumstances, DOJ's invocation of the

separation of powers cannot justify staying this Court's carefully considered and fully supported

order.[6]

### C.      A Stay Would Substantially Harm OAG.

DOJ's failure to establish either a likelihood of success on the merits or irreparable harm

is more than reason enough to deny its motion for a stay. *See Nken*, 556 U.S. at 434 (describing

the "first two factors" as the "most critical"). The remaining *Nken* factors only confirm that a

stay is unwarranted here because it would "substantially injure" OAG. *Id.* DOJ's lone argument

to the contrary is its assertion that because it does not seek to enforce the existing and

unlawfully-issued subpoenas, OAG will suffer no harm from a stay. Mot. 14. But that breezy

contention, offered without development or explanation, cannot be squared with the facts.

The course of this litigation makes clear that DOJ is seeking a stay to achieve exactly one

end, which is to have Sarcone continue investigating OAG. The Court's order has two effects:

(1) quashing the subpoenas, and (2) disqualifying Sarcone from further involvement in the

investigations of OAG. Order 24. DOJ argues that it will not seek to enforce the unlawful

subpoenas pending appeal. Mot. 14. But it also argues that this Court's order does it irreparable

damage. The only possible conclusion is that DOJ wishes to permit Sarcone to resume his

---

[6] For that reason, the discussion of irreparable harm in the district court's stay order in *Garcia* is
unpersuasive. The court there found that the separation-of-powers implications of an order
disqualifying an Acting U.S. Attorney amount to irreparable injury. *Garcia*, 2025 WL 2985284,
at *2. Because the court failed to consider the effect of a stay on the separation of powers,
however, its analysis was incomplete.

politically motivated, constitutionally untenable investigations into OAG—which comes as no surprise given DOJ's repeated and continuing attempts to use its vast prosecutorial powers to retaliate against Attorney General James and her office.  *See supra* Part II.

The irreparable harm to OAG that would flow from that state of affairs is self-evident. Reinstating Sarcone would restore the very structural defect that this Court already found unlawful, allowing him to exercise the powers of an officer of the United States while in open violation of the FVRA and the Appointments Clause.  As the Supreme Court has recognized, being subjected to government action that is undertaken without lawful authority is a grave and cognizable injury.  *See Lucia*, 585 U.S. at 251 ("'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief.").  When the Appointments Clause is violated, "harm is *presumed*."  *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 154 (D.C. Cir. 2020) (emphasis added).

That this issue arises in the grand jury context exacerbates the injury to OAG.  The investigative powers of the grand jury are unique in scope.  "[T]here are few if any other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence."  *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 432-34 (1983).  It is no secret that prosecutors enjoy outsized influence in a grand jury investigation: "The prosecutor can . . . present cases to the grand jury in secret session, and on the basis of his one-sided presentation of the facts, can cause the citizen to be indicted and held for trial." Jackson, *supra*, at 2.  And grand jury subpoenas, in particular, are "almost universally instrumentalities of the United Attorney's office."  *In re Grand Jury Proceedings*, 486 F.2d 85, 90 (3d Cir. 1973).  Put simply, there is ample opportunity for prosecutorial abuse.

In light of those realities, the prospect of Sarcone's return to the investigations into OAG is deeply troubling.  Even assuming he would adhere to DOJ's claim that it will not enforce the subpoenas he previously requested, nothing would stop him from seeking new subpoenas or otherwise bringing the powers of the grand jury and the U.S. Attorney's Office to bear on OAG. Those risks are especially salient when OAG has continued to pursue lawsuits to hold the Trump Administration accountable, and when both President Trump and Attorney General Bondi have continued to directly retaliate against those whom they perceive as challenging the Administration, including Attorney General James herself.  *See* Reply in Supp. of Mot. to Quash 3-5; *supra* Part II.  There is every reason to fear that Sarcone would, once again, follow their lead.

### D.    A Stay Would Adversely Affect the Public Interest.

The fourth *Nken* factor—"where the public interest lies," 556 U.S. at 434—also counsels against a stay.  There is a "substantial public interest" in requiring the Executive Branch to "abide by the federal laws that govern [its] existence and operations."  *Am. Council of Learned Soc'y v. McDonald*, 792 F. Supp. 3d 448, 495 (S.D.N.Y. 2025) (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).  And there is a substantial public interest in ensuring that criminal investigations are conducted only by officials lawfully authorized to exercise prosecutorial power.  Indeed, "the citizen's safety lies in the prosecutor . . . who serves the law and not factional purposes."  Jackson, *supra*, at 8.  Far from advancing the public interest, allowing "this charade of [Sarcone] masquerading as the United States Attorney for this District," *United States v. Jefferson*, 2026 WL 145277, at *8 (E.D. Va. Jan. 20, 2026), furthers a form of "cronyism" that the Framers meant to leave behind, Order 10.

DOJ resists that conclusion by arguing that "the 'irreparable harm' and 'public interest' factors of the *Nken* test 'merge'" when "the government is a party."  Mot. 14 (quoting *New York*

20

*v. DHS*, 969 F.3d 42, 59 (2d Cir. 2020)).  But, here, *both* parties are the government, and the significant harms from a stay to the State of New York cannot be (and must not be) discounted in evaluating the public interest.  In any event, DOJ has failed to show any irreparable harm to itself, *see supra* Section IV.B, meaning that the public interest factor also does not cut in its favor.

E.    <u>Other Stay Orders Provide No Basis to Issue a Stay Here.</u>

Because the *Nken* factors uniformly cut against DOJ, the motion for a stay pending appeal should be denied.  And although two other courts that have disqualified purported Acting U.S. Attorneys have issued stays, *Garcia*, 2025 WL 2985284, at *2, *Giraud*, 795 F. Supp. 3d at 606, there are dynamics present in this case that were absent there.

Specifically, as OAG explained in its Motion to Quash, the public record leaves no doubt that these grand jury subpoenas were motivated by retaliation for OAG's good-faith efforts to enforce the law against Mr. Trump, as a private citizen, and his allies.  *See* Mot. to Quash 16-22. And the subpoenas unreasonably interfered with the State of New York's sovereignty and infringed on OAG's First Amendment rights.  *See id.* at 22-31.  The Court did not reach those issues in its order quashing the subpoenas.  But neither does it need to ignore them in ruling on DOJ's motion for a stay.  *See R.I. State Council of Churches v. Rollins*, 158 F.4th 304, 316-17 (1st Cir. 2025) (denying government's motion for a stay pending appeal, noting "we . . . cannot ignore the particular events preceding this litigation"); *see also Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power . . . to mould each decree to the necessities of the particular case.").

Those dynamics readily distinguish this case from the two others in which stays were issued.  *Garcia* and *Giraud* involved facially regular criminal prosecutions in which the unlawfully appointed Acting U.S. Attorney played no role, before or after the validity of her

appointment was challenged. *See Garcia*, 2025 WL 2784640, at *5; *Giraud*, 795 F. Supp. 3d at 605-06. The individuals who brought the challenges were criminal defendants who happened to be prosecuted during the tenure of an unlawfully appointed purported Acting U.S. Attorney. Unlike OAG, the criminal defendants in those cases had not successfully pursued civil enforcement actions against Mr. Trump and his allies and had not been the subject of dozens of social media posts and public statements by President Trump and others in his administration vowing retribution. Although the Appointments Clause violations at issue in those cases were grave, the prosecutions did not suffer from the litany of other constitutional defects that the OAG grand jury investigations do. And, critically, they did not share the one characteristic that makes the OAG investigations especially dangerous for the rule of law—they were not initiated by an illegitimate prosecutor, selected for his "personal[] alli[ance]" to the President and his "obsequious" willingness to bring baseless criminal investigations aimed at those the President disfavors. Order 10 (quoting The Federalist No. 76, at 394-95 (Alexander Hamilton)); *Giraud*, 795 F. Supp. 3d at 573-74.

Far more similar to this case are the cases dismissing indictments against Attorney General James herself and the former Director of the Federal Bureau of Investigation, James Comey. The records in those cases, as in this one, made manifest that the prosecutor in question had been installed—and the criminal proceedings had been initiated—for the purpose of retaliation. *James*, 2025 WL 3266931, at *2-3; *Comey*, 2025 WL 3266932, at *2-3. Both indictments were dismissed, and although DOJ has filed notices of appeal, it has not sought a stay of either ruling, Chen Decl. ¶¶ 3-8—a tacit admission that there is no basis for such extraordinary relief when the Administration seeks to circumvent the Constitution in order to

target the President's political enemies.  DOJ should have shown such restraint in this case as well.

## V.  <u>CONCLUSION</u>

The Motion for a Stay Pending Appeal should be denied.

DATED: January 30, 2026                          OFFICE OF THE NEW YORK STATE
                                                 ATTORNEY GENERAL

                                        By:  _____
                                             Kumiki Gibson*
                                             (New York Bar #2261063)
                                             Michael Jaffe*
                                             (New York Bar #5357330)
                                             28 Liberty Street
                                             New York, New York 10005
                                             Telephone:    (212) 416-8965
                                             E-mail:  kumiki.gibson@ag.ny.gov
                                             E-mail:  michael.jaffe@ag.ny.gov

DATED: January 30, 2026                    MUNGER, TOLLES & OLSON LLP

By: _____

Brad D. Brian*
Hailyn J. Chen*
E. Martin Estrada*
Victoria A. Degtyareva*
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702
E-mail:  brad.brian@mto.com
E-mail:  hailyn.chen@mto.com
E-mail:  martin.estrada@mto.com
E-mail:  victoria.degtyareva@mto.com

Donald B. Verrilli, Jr.
(Bar Roll #105107)
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001
Telephone:     (202) 220-1100
Facsimile:     (202) 220-2300
E-mail:  donald.verrilli@mto.com

*Admitted pro hac vice

DATED: January 30, 2026                    CAPEZZA HILL, LLP

By: _____

Benjamin W. Hill (Bar Roll #514953)
30 South Pearl Street, Suite P-110
Albany, New York 12207
Telephone:     (518) 478-6065
Facsimile:     (518) 407-5661
E-mail:  ben@capezzahill.com

*Attorneys for the Office of the New York State
Attorney General*

24

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Office of the New York State Attorney General ("OAG"), certifies that this brief contains 6,814 words, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Court's Individual Rules and Procedures for Civil Cases.

DATED: January 30, 2026                MUNGER, TOLLES & OLSON LLP


By: _____
     Hailyn J. Chen

     *Attorneys for the Office of the New York State Attorney General*

25