```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
                                                              :
                                                              :
IN RE GRAND JURY SUBPOENAS TO THE                             :   25 Misc. 19 (LGS)
OFFICE OF THE NEW YORK STATE                                  :
ATTORNEY GENERAL                                              :   OPINION & ORDER
                                                              :
                                                              :
                                                              :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge, sitting by designation:

On January 8, 2026, an Opinion & Order issued that quashes two grand jury subpoenas directed at the Office of the New York State Attorney General (the "State Government") and disqualifies John A. Sarcone, III from further participation in the underlying investigations (the "Appointment Order" or the "Order"). The U.S. Attorney's Office for the Northern District of New York (the "Federal Government") moves for a stay pending appeal. The State Government opposes. For the reasons explained below, the motion is denied.

**I.   BACKGROUND**

Familiarity with the facts underlying the January 8, 2026, Appointment Order is assumed. On August 5, 2025, Mr. Sarcone, purporting to act as Acting U.S. Attorney for the Northern District of New York, personally directed the issuance of two grand jury subpoenas to the State Government. The subpoenas concerned two civil enforcement actions brought by the State Government against President Trump and the National Rifle Association, respectively. The subpoenas were returnable to the grand jury at the James T. Foley Courthouse. The accompanying letters stated that, if the State Government preferred to produce by mail or email rather than appearing, it could send the documents to Mr. Sarcone directly.

On January 8, 2026, the Appointment Order granted the State Government's motion to quash. The Order rests on the Federal Vacancies Reform Act (the "FVRA"), 5 U.S.C. § 3345(a)(1), and statutes governing U.S. Attorney appointments. The Order concludes that Mr. Sarcone was not lawfully serving as Acting U.S. Attorney under the FVRA because he was not the First Assistant when the vacancy arose. The Order further concludes that the U.S. Attorney General's general delegation authority under 28 U.S.C. § 515 cannot create a de facto Acting U.S. Attorney outside the FVRA's framework. As remedies, the Order quashes the two subpoenas that Mr. Sarcone personally directed without lawful authority as "Acting United States Attorney," and disqualifies Mr. Sarcone "from any further involvement in prosecuting or supervising any investigation" related to the two civil cases, "regardless of his title."

The Federal Government now seeks a stay of the "Order quashing the subpoenas and disqualifying Mr. Sarcone from participating in the subject investigation" of the State Government pending appeal under Federal Rule of Appellate Procedure 8(a)(1). The Federal Government represents that if a stay is entered, the Federal Government will not seek to enforce the two subpoenas during the pendency of the appeal. The State Government opposes the motion.

## II.     LEGAL STANDARD

Four factors guide whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v.*

*Holder*, 556 U.S. 418, 434 (2009);[1] *accord Mahdawi v. Trump*, 136 F.4th 443, 449 (2d Cir. 2025).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of the Court's discretion."  *Mahdawi*, 136 F.4th at 449.  The first two factors -- likelihood of success on the merits and irreparable harm -- "are the most critical."  *Nken*, 556 U.S. at 434; *Mahdawi*, 136 F.4th at 449.

III.   DISCUSSION

Consideration of the four *Nken* factors weighs against granting a stay.  The Federal Government's motion for a stay pending appeal is, therefore, denied.

   A. Likelihood of Success on the Merits

The first *Nken* factor asks whether the movant has made a "strong showing" that it is likely to succeed on appeal.  *See Nken*, 556 U.S. at 434; *accord Mahdawi*, 136 F.4th at 449.  Some district courts have held that a movant seeking a stay may alternatively satisfy this factor by showing that (1) there are "serious questions" as to the merits and (2) the "balance of hardships tips *decidedly* in its favor."  *See Starke v. SquareTrade, Inc.*, No. 16 Civ. 7036, 2017 WL 11504834, at *1 (E.D.N.Y. Dec. 15, 2017) (applying, on a motion to stay, the preliminary injunction standard set out in *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-37, 37 n.7 (2d Cir. 2010), which concludes that *Nken* did not implicitly abrogate the Second Circuit's "serious questions" standard); *In re A2P SMS Antitrust Litig.*, No. 12 Civ. 2656, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014) ("A 'serious questions' standard is particularly appropriate when a district court is asked to stay its own order

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

[as] . . . the court has already determined that the applicant failed to succeed on the merits."). The Federal Government has not carried its burden under either approach.

### 1. "Strong Showing" of Success on Appeal

The Federal Government fails to make a strong showing under *Nken*. The only appellate decision to address the appointment maneuver at issue affirmed the core legal conclusions reached in the Appointment Order and upheld a substantially similar remedy. *See United States v. Giraud*, 160 F.4th 390, 400, 403, 407 (3d Cir. 2025) (holding that "only the first assistant in place at the time of the vacancy automatically assumes acting status under the FVRA" and that the Attorney General's delegation authority cannot be used to create a de facto U.S. Attorney, and affirming the disqualification order). District courts considering the same appointment maneuver have likewise been uniform on the merits. *See United States v. Giraud*, 795 F. Supp. 3d 560, 584-92, 605-06 (D.N.J. 2025), *aff'd*, 160 F.4th 390; *United States v. Garcia*, No. 25 Cr. 230, 2025 WL 2784640, at *5-14, *18 (D. Nev. Sept. 30, 2025), *argued*, No. 25-6468 (9th Cir. Feb. 12, 2026); *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1093-108, 1114 (C.D. Cal. 2025), *reconsideration denied*, No. 22 Cr. 573, 2025 WL 3852786 (C.D. Cal. Dec. 12, 2025); *United States v. Ramirez-Martinez*, No. 22 Cr. 1721, 2026 WL 113431, at *13-18, *22 (D.N.M. Jan. 14, 2026). And unlike those cases, this matter arises pre-indictment and concerns subpoenas that Mr. Sarcone personally directed in ongoing investigations. Such a posture makes the lawfulness of future investigative conduct especially important and supports the narrow disqualification ordered here.

The Federal Government also contends that Rule 17(c)(2) of the Federal Rules of Criminal Procedure does not authorize quashing a subpoena based on an appointment defect. Specifically, the Federal Government argues that "the plain language of the rule makes clear

[that] the focus is on the recipient's ability to *comply* with the demands of the subpoena . . . and does not authorize district courts to quash a subpoena that is otherwise reasonable in scope and purpose based on other issues, such as the method by which the person who requested the subpoena from the grand jury was appointed." The Federal Government is correct that Rule 17(c)(2) permits quashing a subpoena only "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). But its argument misses the point. The Appointment Order concludes that compliance with subpoenas personally directed by an official using authority he did not lawfully possess is by its nature unreasonable and oppressive. That the Federal Government disagrees with the Order's analysis does not amount to a "strong showing" under *Nken*. *See Nken*, 556 U.S. at 434.

The Federal Government next invokes principles of grand jury independence and limits on judicial interference with prosecutorial decisions. *See United States v. R. Enters., Inc.*, 498 U.S. 292, 298-300 (1991); *United States v. Calandra*, 414 U.S. 338, 343 (1974). These principles are well-established. But the Federal Government again misses the mark. The Appointment Order does not bar a *lawful* investigation. To the contrary, the Order reinforces those principles by ensuring the lawful authority of those conducting and supervising Department of Justice criminal investigations. As the Order explains, the Federal Government remains free to continue the instant investigations, including reissuing the subpoenas, through lawfully authorized officials.

Finally, the Federal Government's reliance on differing remedies in other districts does not change that conclusion because that variation reflects differing facts, not disagreement on the law. In New Jersey, the district court disqualified Acting U.S. Attorney Alina Habba from the two prosecutions at issue, one in which she had signed the indictment and the other in which her

5

only involvement apparently was as head of the U.S. Attorney's Office. *Giraud*, 795 F. Supp. 3d at 605-06. Third Circuit affirmed these case-specific disqualifications. 160 F.4th 390. In Nevada, the district court similarly ordered case-specific disqualification, barring Acting U.S. Attorney Sigal Chattah from the defendants' prosecutions, even though she had played no personal role other than supervising the government's responses to defendants' motions. *Garcia*, 2025 WL 2784640, at *5, *18 & n.14. In the Central District of California, the court disqualified Acting U.S. Attorney Bilal Essayli from performing any role -- including participating in the movants' prosecutions -- as Acting U.S. Attorney, but determined that he could act in the role of First Assistant U.S. Attorney, where he had not been involved in the underlying cases. *Ramirez*, 807 F. Supp. 3d at 1108 n.23. In New Mexico, the district court reached the same conclusion on substantially the same facts. *Ramirez-Martinez*, 2026 WL 113431, at *22. In the Eastern District of Virginia, the court disqualified Acting U.S. Attorney Lindsey Halligan and dismissed indictments against James Comey and Letitia James (which Ms. Halligan had personally presented to the grand jury), denying as moot defendants' motions to disqualify Halligan from future involvement in their prosecutions. *United States v. Comey*, No. 25 Cr. 272, 2025 WL 3266932, at *15 (E.D. Va. Nov. 24, 2025), *appeal docketed*, No. 25-4674 (4th Cir. Dec. 22, 2025); *United States v. James*, No. 25 Cr. 122, 2025 WL 3266931, at *13 (E.D. Va. Nov. 24, 2025), *appeal docketed*, No. 25-4673 (4th Cir. Dec. 22, 2025); *see also United States v. Jefferson*, No. 25 Cr. 160, 2026 WL 145277, at *3, *8 (E.D. Va. Jan. 20, 2026) (holding that prior rulings regarding Ms. Halligan's unlawful appointment were binding in similar E.D. Va. cases and barring Ms. Halligan from identifying as a U.S. Attorney until she lawfully holds the office). In each instance, the court tailored the remedy to the nature and scope of the officer's unlawful conduct. *Cf. Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251 (2018) (holding that

the remedy for an unlawfully appointed ALJ was a hearing before a different, properly appointed ALJ, even if the original ALJ later received a valid appointment).

That some district courts declined to invalidate other actions taken by improperly appointed U.S. Attorneys does not compel a different result here. Each case turns on its own facts. The Appointment Order imposes a narrow disqualification that applies only to the two investigations at issue, and rests on Mr. Sarcone's direct and personal involvement with subpoenas issued during ongoing pre-indictment investigations. These facts distinguish this case from those cited by the Federal Government. Taken together, the Federal Government has not made a "strong showing" of likely success on appeal.

## 2. "Serious Questions" Standard

The Federal Government focuses its briefing on the alternative means of satisfying *Nken*'s first prong, alleging that this case presents "serious legal questions" warranting a stay. Because the movant "must additionally establish that the balance of hardships tips *decidedly* in its favor," the Federal Government's overall burden under the "serious questions" standard "is no lighter than the one it bears under the likelihood of success standard." *Citigroup*, 598 F.3d at 35.

Even assuming that this case presents sufficiently substantial questions, the Federal Government's briefing fails to address the second prong of the test -- showing that the "balance of hardships tips *decidedly* in its favor." *Id.* The Federal Government identifies no concrete hardship from proceeding without Mr. Sarcone on these investigations. Mr. Sarcone has no prior prosecutorial experience, and the Federal Government offers no insight into what unique attributes he brings to the instant investigations. Meanwhile, a stay would burden the State Government; being subjected to government action that is undertaken without lawful authority is a serious and cognizable injury. *See Lucia*, 585 U.S. at 251 ("[O]ne who makes a timely

7

challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief."). On this record, the Federal Government has not demonstrated that the "balance of hardships tips *decidedly* in its favor," and cannot meet its burden under the "serious questions" standard. *Citigroup*, 598 F.3d at 35.

### B. Irreparable Harm

The second *Nken* factor, whether the Federal Government will be irreparably harmed absent a stay of the Order quashing the subpoenas and disqualifying Mr. Sarcone, also weighs against granting a stay. Regarding the subpoenas, the Federal Government represents that if a stay is entered, it will not enforce the two subpoenas during the pendency of the appeal. That representation undercuts any claim of irreparable harm tied to quashing the subpoenas. On disqualification, the asserted harm is primarily disruption to the Executive Branch's preferred chain of command and infringement on Executive prerogatives. Here the Federal Government's showing is likewise insufficient.

First, the Federal Government's cited "chain of command" cases are not comparable. In *Dellinger v. Bessent*, the appellate court stayed an order that compelled the President "to recognize and work with an agency head whom he has already removed." No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (per curiam). *Dellinger* is inapplicable because the underlying district court order is the converse of the Appointment Order. The latter does not force the Executive Branch to work with any particular individual -- much less one "already removed" by the President. *Id.* Instead, the Appointment Order permits the Federal Government to proceed with *any* lawfully authorized official -- placing only one of the several thousand attorneys employed by the Department of Justice off limits. The Federal Government has not identified investigative steps that only Mr. Sarcone can undertake, nor has it explained why other

8

prosecutors cannot supervise the investigations. While disruption to a preferred reporting structure may constitute irreparable injury in some circumstances, it does not where the Federal Government fails to proffer anything that makes Mr. Sarcone's contribution in the instant investigations unique.

Second, the Federal Government invokes concerns about separation of powers and cites decisions describing harms from interference with "Executive branch prerogatives." *Nixon v. Fitzgerald*, 457 U.S. 731, 743, 754-55 (1982); *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975). These abstract invocations carry little weight without concrete disruption of Executive activities. *Compare Texas v. United States*, 787 F.3d 733, 767-68 (5th Cir. 2015) (denying stay where district court order would not meaningfully disrupt Department of Homeland Security operations), *with National Treasury Employees Union v. Trump*, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025) (per curiam) (granting stay where preliminary injunction effectively "tie[d] the government's hands" and "eliminate[d] the President's control over the decision to pause implementation of the Executive Order"). Because the Federal Government has not identified any concrete harm that would result from a denial of a stay (i.e., why having another -- likely, more experienced -- prosecutor replace Mr. Sarcone in the investigations would disadvantage the Federal Government), any abstract harm stemming from interference with Executive prerogative carries little weight.

Third, the Federal Government points to stays entered in *Garcia* (Nevada) and *Giraud* (New Jersey). These were the first two decisions interpreting the FVRA in this context, before judicial interpretation coalesced into a uniform view. Since then, courts addressing the same appointment maneuver have all reached the same conclusion: that those purporting to act as U.S. Attorneys were doing so unlawfully. *See Ramirez*, 807 F. Supp. 3d at 1096-106, 1114;

*Ramirez-Martinez*, 2026 WL 113431, at *13-17.  No court has concluded otherwise, and the only circuit court to consider the issue affirmed.  *Giraud*, 160 F.4th at 400.  The Federal Government has not shown irreparable harm sufficient to warrant a stay.

### C. Substantial Injury to Other Parties

The third *Nken* factor -- whether a stay will substantially injure other parties to the proceeding -- also weighs against granting a stay.  In response to this factor, the Federal Government represents that it will not enforce the existing subpoenas during the pendency of the appeal.  But that representation does not alleviate the State Government's injury.  Granting a stay would reinstate Mr. Sarcone's participation in the investigations he directed without lawful authority, restoring the harm remedied by disqualification.  *Cf. Lucia*, 585 U.S. at 251-52; *Ryder v. United States*, 515 U.S. 177, 187-88 (1995); *Flinton v. Comm'r of Soc. Sec.*, 143 F.4th 90, 99 (2d Cir. 2025).  This factor weighs against a stay.

### D. Public Interest

A consideration of the public's interest also favors denying a stay.  When the government is a party, the final two *Nken* factors -- substantial injury to other parties and the public interest -- often overlap.  *See New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2d Cir. 2020).  As the former weighs against a stay, the merged inquiry does not support the Federal Government's position.

The Federal Government again invokes principles of grand jury independence and Executive branch discretion.  *See Calandra*, 414 U.S. at 343; *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).  While grand jury independence and Executive branch discretion are undoubtedly important, denying the Federal Government's motion does not halt the instant investigations.  The Federal Government is free to continue investigating through lawful channels.  As such,

these principles do not outweigh the public's "substantial" interest in requiring the Executive Branch to "abide by the federal laws that govern [its] existence and operations." *Am. Council of Learned Soc'y v. McDonald*, 792 F. Supp. 3d 448, 495 (S.D.N.Y. 2025). The public's interest in ensuring that those purporting to wield the powers of a U.S. Attorney lawfully possess those powers counsels against a stay.

Ultimately, the *Nken* factors do not support a stay. The Federal Government has not demonstrated a strong likelihood of success on the merits or "serious legal questions" coupled with a balance of hardships tipping decidedly in its favor. Any harm from the investigation-specific disqualification is abstract at best, whereas granting a stay would reinstate an official who acted without lawful authority -- a clear injury to the State Government. The public interest likewise favors ensuring that governmental power is exercised only by officials with lawful authority. Each factor, and all four taken together, weigh against granting a stay.

### IV. CONCLUSION

For the foregoing reasons, the Federal Government has not carried its burden under *Nken* and its motion for a stay pending appeal is **DENIED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 52.

Dated: March 11, 2026
    New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

11